[No. S061765. Apr. 20, 1998.]

ROBERT M. RIDGLEY et al., Plaintiffs and Appellants, v.
TOPA THRIFT AND LOAN ASSOCIATION, Defendant and Appellant.

## COUNSEL

Jill A. Thomas, Lewitt, Hackman, Hoefflin, Shapiro, Marshall & Harlan and Richard M. Hoefflin for Plaintiffs and Appellants.

Nebenzahl, Kohn, Davies & Leff, Randall S. Leff, M. Randall Davies and Gerald S. Frim for Defendant and Appellant.

## OPINION

**WERDEGAR, J.**—Defendant loaned plaintiffs $2.3 million for two years, secured by real property plaintiffs had improved and intended to sell. Plaintiffs sold the property before the loan matured and, on defendant's demand, repaid the loan principal, together with a prepayment fee of about $113,000, equal to six months' interest. Under the parties' loan agreement, plaintiffs owed defendant a prepayment fee at the time of sale only if plaintiffs had been more than 15 days late with any scheduled interest payment or had defaulted on any other contractual obligation to defendant; the fee was imposed here because plaintiffs had been late with an interest payment.

Plaintiffs sued to recover the prepayment charge they had paid. The question presented is whether such a prepayment charge, conditioned on late interest payments, constitutes an unenforceable liquidation of damages or penalty for late payment of interest (Civ. Code, § 1671, subd. (b); *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 736-740 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39]), or an enforceable provision for alternative performance, that is, a surcharge compensating defendant for prepayment of the principal (e.g., *Meyers* v. *Home Sav. & Loan Assn.* (1974) 38 Cal.App.3d 544, 546-547 [113 Cal.Rptr. 358]). We conclude the trial court correctly understood the prepayment provision here to be a penalty for delinquency in meeting the contractual interest payments and thus correctly

held the penalty to be unenforceable, because it bore no relationship to the potential damages defendant would incur from a late interest payment. We therefore reverse the judgment of the Court of Appeal, which reversed the trial court's judgment for plaintiffs.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert M. Ridgley is an architect and property developer; plaintiff Marlene Ridgley is his wife. In 1990, as part of Robert's business, he purchased a parcel in Encino (the Property) in order to build a luxury custom home for speculation and sale. Plaintiffs jointly owned the Property. As of late 1990, the construction was almost complete and the home was on the market for sale. The construction loan was coming due and Robert was looking for a bridge loan, i.e., a short-term loan between the construction loan and the buyer's permanent loan. A loan broker put Robert in touch with defendant Topa Thrift and Loan Association (Topa).

After negotiation, the parties agreed on the terms of a loan in the amount of $2.3 million. On December 21, 1990, plaintiffs executed a promissory note (the Note), assignment of rents, and deeds of trust in connection with this transaction. Repayment of the principal was due December 21, 1992. Interest payments, at a variable rate of interest, were due monthly on the 21st day of the month. The Note was on a preprinted form supplied by Topa.

The Note, in its preprinted text, contained provision for a prepayment charge, as follows: "Borrower may at any time prepay the outstanding principal balance of this Note in whole or in part; provided, however, Borrower will pay to Lender a prepayment charge of six (6) months' interest at the rate in effect at the time of prepayment on the amount prepaid. Such a prepayment charge will be made whether such prepayments are made voluntarily, involuntarily or upon acceleration of this Note. No such prepayment charge will be made on prepayments made five (5) or more years after the date of this Note."

During negotiations, Robert objected to the five-year prepayment charge provision. In response, Topa inserted a typewritten addendum stating: "PROVIDED ALL SCHEDULED PAYMENTS HAVE BEEN RECEIVED NOT MORE THAN 15 DAYS AFTER THEIR SCHEDULED DUE DATE, AND FURTHER PROVIDED THAT THERE HAVE BEEN NO OTHER DEFAULTS UNDER THE TERMS OF THIS NOTE OR ANY OTHER NOW EXISTING OR FUTURE OBLIGATION OF BORROWER TO TOPA, THEN NO PREPAYMENT CHARGE WILL BE ASSESSED IF THIS LOAN IS PAID IN FULL AFTER June 21, 1991."

Robert requested that an impound fund be established, via a passbook account, for automatic monthly payments. The first 10 payments were

automatically made from this account and, when the funds were depleted, Robert timely made the November 21, 1991, payment. In late 1991, Robert contacted Topa to renegotiate the loan for easier payments. As an accommodation to plaintiffs, starting in December 1991, Topa agreed to change the due date from the 21st to the 1st of each subsequent month. Thus, the December 21 payment became due January 1, 1992. Robert made the payment due on January 1 within a 10-day grace period provided for in the agreement, and made no further payment until March 12, 1992.

During January and February 1992, a number of people expressed interest in buying the Property. Robert kept defendant apprised of all of the sale activities and had ongoing discussions with defendant about further modification or extension of the loan. By February, the Property was in escrow and scheduled to close in April.

On March 3, Topa confirmed its agreement to a modification by letter stating: "Upon receipt and confirmation by Topa of the above [a copy of the escrow instructions], Topa agrees to accept the following payment schedule for the months of March and April, 1992; payments of 19,500 to be received by Topa no later than March 12, 1992 and April 12, 1992." As requested by defendant, Robert provided it with a copy of the escrow instructions and timely made the payment due on March 12.

Topa made a payment demand to the escrow officer for $2,365,502, which included a prepayment charge of $113,046, as well as a demand fee and a late charge purportedly for the March payment, these charges and fees together totaling $114,622. Plaintiffs objected to these assessments. Topa agreed to and did release the deed of trust on the Property and maintained the $114,622 balance as a lien on plaintiffs' house. Plaintiffs ultimately paid off this balance, plus accrued interest, when they refinanced their house.

Plaintiffs sued Topa for breach of contract, money paid by mistake, and fraud. The fraud count was eliminated on Topa's motion for summary adjudication. The remaining causes of action were tried to the court, which ruled as follows: "The Court concludes that the prepayment clause as written by [Topa] was in fact a late charge and a penalty in the nature of an unenforceable forfeiture. Judgment therefore is awarded to [plaintiffs] and against [Topa] in the sum of $114,622.42 as reimbursement for the 'prepayment' paid to defendant by plaintiffs as well as any interest thereon paid to defendant." Judgment was subsequently entered awarding plaintiffs $114,622.42 plus interest paid, prejudgment interest, costs and attorney's fees.

Topa appealed from the judgment for plaintiffs, who also appealed, challenging the adequacy of the attorney's fee award. The Court of Appeal

reversed the judgment, concluding the prepayment charge was "not made invalid by conditioning a waiver upon a lack of default. Accordingly, we hold that as the penalty was triggered by the prepayment, it was a valid prepayment provision and was not an invalid late charge or forfeiture." Because it reversed the judgment in plaintiffs' favor, the Court of Appeal did not reach plaintiffs' appeal regarding the amount of attorney's fees awarded them. The dissenting justice would have affirmed the judgment on the same ground it was rendered, i.e., that the prepayment fee conditioned on late interest payments constituted an unenforceable penalty: "[A]fter June 21, 1991, Topa could only assess this fee in the event the Ridgleys defaulted on other terms of the contract. As such, this clause falls squarely within the definition of a penalty or forfeiture which is invalid unless proportionate to the damages sustained." We granted plaintiffs' petition for review.

For the same reasons articulated by the dissenting justice below, we hold the Court of Appeal erred. We reverse and remand for consideration of plaintiffs' appeal.

## DISCUSSION

 The central question is whether the provision contained in the parties' typewritten addendum should be viewed as a charge for prepayment of the loan principal (the position taken by Topa and the Court of Appeal majority) or as a penalty for delinquency in a monthly interest payment (the position taken by plaintiffs, the trial court and the dissenting Court of Appeal justice). We briefly review the law regarding both late payment penalties and charges for prepayment of principal.

 Civil Code section 3275,[1] unchanged since 1872, provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in the case of a grossly negligent, willful, or fraudulent breach of duty." The breaching party may raise section 3275 as an equitable defense to enforcement of the contractual provision or as grounds for relief in an action for restitution of the property forfeited. (*Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 19-22 [230 P.2d 629, 31 A.L.R.2d 1]; *Baffa* v. *Johnson* (1950) 35 Cal.2d 36, 39 [216 P.2d 13]; *Palo and Dodini* v. *City of Oakland* (1947) 79 Cal.App.2d 739, 748 [180 P.2d 764].)

 California law has also long recognized that a provision for liquidation of damages for contractual breach—for example, a preset late payment

---

[1]All further statutory references are to the Civil Code unless otherwise specified.

penalty—can under some circumstances be designed as, and operate as, a contractual forfeiture. To prevent such operation, our laws place limits on liquidated damages clauses. Under the 1872 Civil Code, a provision by which damages for a breach of contract were determined in anticipation of breach was enforceable only if determining actual damages was impracticable or extremely difficult. (1872 Civ. Code, §§ 1670, 1671.) As amended in 1977, the code continues to apply that strict standard to liquidated damages clauses in certain contracts (consumer goods and services, and leases of residential real property (§ 1671, subds. (c), (d)), but somewhat liberalizes the rule as to other contracts: "[A] provision in a contract liquidating the damages for breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (§ 1671, subd. (b) (hereafter section 1671(b)).)[2]

A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671(b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.*, *supra*, 9 Cal.3d at p. 739 (hereafter *Garrett*).) In the absence of such relationship, a contractual clause purporting to predetermine damages "must be construed as a penalty." (*Ibid.*) "A penalty provision operates to compel performance of an act [citation] and usually becomes effective only in the event of default [citation] upon which a forfeiture is compelled without regard to the damages sustained by the party aggrieved by the breach [citation]. The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. [Citations.]" (*Ibid.*)

In short, "[a]n amount disproportionate to the anticipated damages is termed a 'penalty.' A contractual provision imposing a 'penalty' is ineffective, and the wronged party can collect only the actual damages sustained." (*Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 931 [216 Cal.Rptr. 345, 702 P.2d 503]; see also *Ebbert* v. *Mercantile Trust Co.* (1931) 213 Cal. 496, 499 [2 P.2d 776] ["[A]ny provision by which money or property would

[2]Commercial Code section 2718, subdivision (1), a provision of the California Uniform Commercial Code, similarly requires that liquidated damages clauses in contracts for sales of goods or services be "reasonable in light of the anticipated or actual harm caused by the breach" and other factors, and provides that a term fixing unreasonably large damages "is void as a penalty." Certain other types of contracts are also governed by specific statutes, which take precedence over section 1671. (See § 1671, subd. (a); Cal. Law Revision Com. com., 9 West's Ann. Civ. Code (1985 ed.) foll. § 1671, p. 497.)

be forfeited without regard to the actual damage suffered would be an unenforceable penalty."].)

■ Pursuant to these principles, charges for late payment of loan installments have been held unenforceable where they bore no reasonable relationship to the injury the creditor might suffer from such late payments. In *Garrett, supra*, 9 Cal.3d 731, a lender included in its standard promissory note a provision assessing a late payment charge equal to 2 percent annual interest on the loan balance prorated to the period of default. The plaintiffs, in a class action, challenged the charge as an unreasonable attempt to set stipulated damages for contractual default. (*Id.* at pp. 734-735.) This court rejected the lender's contention that the clause merely provided an alternative mode of performance (*id.* at pp. 735-738), and assessed the reasonableness of the clause as a provision for liquidated damages (*id.* at pp. 738-742). We concluded "a charge for the late payment of a loan installment which is measured against the unpaid balance of the loan must be deemed to be punitive in character. It is an attempt to coerce timely payment by a forfeiture which is not reasonably calculated to merely compensate the injured lender." (*Id.* at p. 740, fn. omitted; see also *Baypoint Mortgage Corp.* v. *Crest Premium Real Estate etc. Trust* (1985) 168 Cal.App.3d 818, 829-830 [214 Cal.Rptr. 531] [provision allowing lender to foreclose because of late installment payments unenforceable as forfeiture]; *Sybron Corp.* v. *Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896, 900-903 [143 Cal.Rptr. 306] [in contract for payment of $72,000 in 12 equal monthly installments, clause allowing creditor to obtain stipulated judgment for $100,000 upon any default, including late installment penalty, was unenforceable as unreasonable attempt to liquidate damages for breach].)

In contrast to late payment fees, contractual charges for *prepayment* of the loan principal are generally considered valid provisions for alternative performance, rather than penalties or liquidated damages for breach. ■ Payment before maturity is not a breach of the contract, but simply an alternative mode of performance on the borrower's part; the prepayment charge is not a penalty imposed for default, but an agreed form of compensation to the lender for interest lost through prepayment, additional tax liability or other disadvantage. (See *Gutzi Associates* v. *Switzer* (1989) 215 Cal.App.3d 1636, 1644 [264 Cal.Rptr. 538]; *Meyers* v. *Home Sav. & Loan Assn., supra*, 38 Cal.App.3d at pp. 546-547; *Lazzareschi Inv. Co.* v. *San Francisco Fed. Sav. & Loan Assn.* (1971) 22 Cal.App.3d 303, 307-309 [99 Cal.Rptr. 417] (hereafter *Lazzareschi*).)

Thus the court in *Lazzareschi*, rejecting a buyer's argument that a prepayment fee was excessive as it bore no reasonable relationship to any damage

sustained by virtue of the prepayment, reasoned: "But the *Freedman* [v. *The Rector, supra*, 37 Cal.2d 16] case and all of those which have been based on it are concerned with breach of a contract in some manner. In the instant case, there has been no breach. The borrower had the option, clearly spelled out in the promissory note, of making one or more prepayments. He, by the action of the receiver, availed himself of the option. This is not a situation of liquidated damages. Although the word 'penalty' is used, and perhaps properly so in that a charge is made which is equivalent to unearned interest, there is no penalty in the sense of retribution for breach of an agreement, nor is there provision for liquidated damages because of ascertaining what the damages for such breach may be. Nor is the case one in which there is forfeiture for a default which, under appropriate circumstances, may be relieved under Civil Code section 3275 [citations]. Indeed, in the case before us there is the opposite of default, that is, a payment made before the promissor was obligated to make it." (*Lazzareschi, supra*, 22 Cal.App.3d at p. 307.)

 If fairly characterized simply as a prepayment charge, then, the clause at issue here was valid.[3] If viewed as a charge for late payment of interest, however, the clause has to meet the reasonableness standard of section 1671, and must be deemed unreasonable, and unenforceable as a penalty, under *Garrett*.[4] The complication presented by this case is that the charge here was contingent on *both* events, prepayment of principal *and* late payment of an interest installment (or other default). It can be described, therefore, as both a prepayment charge and a late payment penalty.

"We have consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures." (*Garrett, supra*, 9 Cal.3d at p. 737.) Looking to the substance rather than the form of the disputed provision, we agree with the superior court and the Court of Appeal dissenter that it was invalid because it was intended to, and did, operate as a penalty for late payment. However one describes its form, the intent and effect of the disputed provision here was that any late payment or

---

[3]In the present case, of course, plaintiffs' prepayment was not at their own option; instead, it resulted from Topa's demand for accelerated payment on sale. The prepayment charge provision, however, expressly applied to acceleration, and plaintiffs do not challenge its validity on that basis, but because it was triggered by a late interest payment. (See *Pacific Trust Co. TTEE* v. *Fidelity Fed. Sav. & Loan Assn.* (1986) 184 Cal.App.3d 817, 823-824 [229 Cal.Rptr. 269] [allowing enforcement of prepayment clause upon acceleration, where clause was unambiguously drafted to so apply].)

[4]Topa proffers no plausible argument that a charge of six months' interest on the principal represents "the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained" for late payment of an interest installment. (*Garrett, supra*, 9 Cal.3d at p. 739.) The contract, moreover, expressly provides for a reasonable late payment fee equal to 10 percent of the payment.

other default by plaintiffs would result in a severe penalty—the inability to sell the Property without payment of a sizable preset charge. The circumstances of this transaction rendered the forfeited opportunity to sell without penalty before maturity of the loan particularly significant to plaintiffs, who had improved the Property with the intent of selling it and had obtained the Topa loan merely to "bridge" the period until sale. To Topa, moreover, the value of the disputed provision was clearly to be found in its operation as a penalty for late payment rather than as compensation for prepayment. After plaintiffs made six months of interest payments (after June 21, 1991, that is), Topa would impose the prepayment charge *only* if during the period of the loan plaintiffs had made a late payment or were otherwise in contractual default. That contractual stipulation shows that, from Topa's viewpoint, the purpose of the threatened charge, after June 21, 1991, was to coerce timely payment of interest, not to compensate Topa for interest payments lost through prepayment of principal.

As the dissenting justice below explained, "after the initial six months Topa could not impose the prepayment penalty for the reason the Ridgleys were prepaying the loan before it matured and thus for the legitimate purpose of ' "compensat[ing] for the anticipated interest payments lost by prepayment." ' [Citation.] Rather, after June 21, 1991, Topa could only assess this fee in the event the Ridgleys defaulted on other terms of the contract. . . . [¶] In effect, by limiting its unconditional recovery of prepayment interest to the first six months, Topa was saying it would recover enough in interest payments during that period to compensate fully for lost future interest payments as well as the administrative costs of negotiating this loan and then replacing it with a new loan from another borrower for whatever term remained on this loan. But to ensure the Ridgleys would not be late on any of their interest payments (or default on any other terms of the contract), Topa held over their heads the threat of a $113,000 prepayment penalty which could be collected only 'in the event of [such] default.'

"[Topa does not explain] the logical relationship between a borrower's late payment of one of the monthly interest charges and the rationale for allowing lenders to collect prepayment penalties. . . . [¶] [I]t is difficult to comprehend how Topa suffered a greater loss at the time the Ridgleys paid off this loan because they had been late with one payment (or even had it been two or three or more) than they would have had the Ridgleys been current with every payment during the period the loan remained in effect. To put it another way, the amount of Topa's lost future interest payments and extra administrative expenses is determined by *when* the Ridgleys paid off the loan and not by whether they were or were not late with some interest payments during the period the loan was in effect. Accordingly, it is more

than apparent this prepayment penalty is being imposed as a penalty for the Ridgleys' default in being tardy with one or more monthly interest payments and not to compensate Topa for its lost future interest payments or extra administrative expenses attendant to relending this money."

We find this analysis persuasive. The provision at issue cannot reasonably be regarded as a prepayment charge, because the condition that limits its operation—the late payment of interest—is logically unrelated to the charge's purported function as compensation for prepayment. The charge provision is, instead, plainly intended as an incentive for prompt payment of interest. That would not be fatal, of course, if the amount of the preset charge constituted a reasonable attempt to estimate potential losses from late payment. ■ As stated in a recent decision upon which Topa relies, "A liquidated damages provision is not invalid merely because it is intended to encourage a party to perform, so long as it represents a reasonable attempt to anticipate the losses to be suffered." (*Weber, Lipshie & Co.* v. *Christian* (1997) 52 Cal.App.4th 645, 656 [60 Cal.Rptr.2d 677].) ■ But, as mentioned earlier, the charge of six months' interest on the entire principal, imposed for any late payment or other default, cannot be defended as a reasonable attempt to anticipate damages from default. Under these circumstances, however the charge is formally characterized, it is, in substance, an unenforceable penalty for late payment. ■■■ "If the sum extracted from the borrower is designed to exceed substantially the damages suffered by the lender, the provision for the additional sum, whatever its label, is an invalid attempt to impose a penalty inasmuch as its primary purpose is to compel prompt payment through the threat of imposition of charges bearing little or no relationship to the amount of the actual loss incurred by the lender." (*Garrett, supra,* 9 Cal.3d at p. 740.)[5]

■ Topa describes the disputed provision as a "conditional waiver of the prepayment charge" and contends that "[i]f this Court recognizes the right of Topa to the payment of a charge upon prepayment of the loan, then it must also recognize that Topa could waive that right upon conditions

[5]The dissent suggests a different set of rules must apply because this was an "arm's-length commercial transaction." (Dis. opn., *post,* at p. 983.) That plaintiffs are small business owners rather than consumers, however, does not deprive them of section 1671's protection against unreasonable penalties or of the right to relief from contractual forfeiture under section 3275. Similarly, we reject Topa's oral argument suggestion that our *Garrett* decision does not apply because it predates the 1977 repeal of former section 1670 and the simultaneous amendment of section 1671. Nothing in the 1977 legislation indicates an intent to abrogate *Garrett*'s analysis of unjustified late fees as unenforceable penalties, an analysis that has been cited and followed in several post-1977 decisions (see, e.g., *Perdue* v. *Crocker National Bank, supra,* 38 Cal.3d at p. 931; *Baypoint Mortgage Corp.* v. *Crest Premium Real Estate etc. Trust, supra,* 168 Cal.App.3d at pp. 829-830) and which reflects as well the longstanding and still operative principle of allowing relief from contractual forfeitures.

bargained for in the context of the commercial transaction at issue." We disagree. That the prepayment fee might have been imposed without condition does not imply it may validly be imposed on the condition of plaintiffs' late payment of interest. ▄▄ A forfeiture or unreasonable penalty, imposed only upon the other party's default, is unenforceable even though the same money, property or other consideration might have validly been bargained for as a form of contractual performance. A contrary conclusion would allow unreasonable late charges and other penalties to escape legal scrutiny through simple rephrasing as a conditional waiver. ▄▄ Under Topa's "conditional waiver" theory, virtually any penalty or forfeiture could be enforced if characterized as a waiver. To accept that theory would be to "condone a result which, although directly prohibited by the Legislature, may nevertheless be indirectly accomplished through the imagination of inventive minds." (*Garrett, supra*, 9 Cal.3d at p. 737.) We will not do so.

Because we conclude the disputed provision was an unenforceable penalty for late payment of interest, we need not reach the second question addressed by the Court of Appeal and raised in the petition for review: whether the provision can or should be interpreted as requiring timely interest payments only in the first six months of the loan (during which period plaintiffs made timely payments from the impound fund). Because Topa's demand for a prepayment fee of $113,046 was based on an unenforceable penalty provision, the superior court correctly found for plaintiffs without reaching the interpretive issue.

DISPOSITION

The judgment of the Court of Appeal is reversed. The matter is transferred to the Court of Appeal for consideration of plaintiffs' appeal.

George, C. J., Kennard, J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

In this commercial transaction, involving a "bridge loan" in connection with the building for sale of a luxury "spec" home, the loan document included a clause to the following effect: If borrowers prepaid the loan within six months, there would be a prepayment charge of six months' interest. After that time, "provided all scheduled payments have been received not more than 15 days after their scheduled due date" and there were no other defaults, no prepayment charge would be assessed. Borrowers made timely scheduled payments for the first few months of the loan; thereafter, their payments were untimely. When they subsequently prepaid the loan, lender demanded the prepayment charge. The trial court ruled that the charge was an invalid penalty for late payment; the Court of Appeal

reversed, concluding that the charge was a valid prepayment charge, not a penalty or liquidated damages for a late payment.

The majority now reverse the Court of Appeal decision. They conclude that although lender had a right to impose a prepayment charge in a commercial transaction of this kind, the fee here was a disguised penalty for late payment that bore no reasonable relation to the lender's administrative costs.

I disagree. The prepayment clause was a negotiated agreement between sophisticated commercial parties. The original loan agreement included a straight prepayment requirement. For an additional consideration, the lender agreed to modify the loan agreement to waive the prepayment charge after six months, on the condition that borrowers made timely payments and avoided default. The condition was not met. Borrowers were late on several payments. The late payments did not trigger a penalty; indeed, lender waived late fees and even agreed to a new payment schedule. Borrowers, however, failed to meet the condition that they had negotiated for avoiding a prepayment charge. They could have continued to make payments through the life of the loan. They chose instead to prepay. Even with the prepayment charge they incurred a significant savings—in the amount of approximately two months of scheduled payments.

Prepayment charges do not constitute a forfeiture; they are a valid contractual obligation. "Early California cases firmly established that a lender may refuse to accept payment of a debt before the debt is due. [Citations.] In the absence of statutory or contractual permission, 'a debtor has no more right to pay off the obligation prior to its maturity date than he does to pay it off after its maturity date.' [Citation.] Therefore, a lender who is willing to accept early payment may extract additional consideration from the borrower in exchange for the privilege of prepayment." (*Gutzi Associates* v. *Switzer* (1989) 215 Cal.App.3d 1636, 1644 [264 Cal.Rptr. 538].) The prepayment charge is merely the equivalent of unearned interest. "The lender may agree to give the borrower an option to prepay, but may charge a premium or penalty for exercise of this option to compensate for the anticipated interest payments lost by prepayment." (*Pacific Trust Co. TTEE* v. *Fidelity Fed. Sav. & Loan Assn.* (1986) 184 Cal.App.3d 817, 823 [229 Cal.Rptr. 269].)

Under these clear precedents, it is unquestionable that the lender was entitled unconditionally to impose a penalty in the event of prepayment. Unlike the majority, I do not conclude that such a provision is rendered invalid simply because it is made conditional, to the obvious advantage of the borrower, in an arm's-length commercial transaction.

There is nothing illogical or unfair about the agreement. Borrowers evidently determined that it was worth paying an additional consideration to

negotiate a modification of the agreement that would permit them to avoid a prepayment charge if they assumed the risk that they would not be in default under its terms. For its part, lender may have been willing to make the loan to a customer who was in perfect compliance because of risks it assumed and consequences it faced from mounting loan defaults in a high-risk real estate market. The consequences of default for a lender, e.g., in the form of required reserves for losses and chargeoffs for accounts past due, can be significant, particularly for a small lender. There is no indication that lender or borrower viewed their negotiated agreement as a means of avoiding restrictions on excessive late charges.

Nor do I agree that regarding the provision at issue here as a conditional waiver of the prepayment charge would encourage hypothetical devious lenders to achieve a result prohibited by the Legislature. (See maj. opn., *ante*, at p. 982.) Rather, the result of the majority's holding will be to limit the ability of commercial borrowers to negotiate to avoid the expense of prepayment charges.

In this highly specialized area, the Legislature, rather than the courts, is the more appropriate vehicle for limiting the bargaining options of commercial parties. "[C]ontrol of charges, if it be desirable, is better accomplished by statute or by regulation authorized by statute than by *ad hoc* decisions of the courts. Legislative committees and an administrative officer charged with regulating an industry have better sources of gathering information and assessing its value than do courts in isolated cases. Besides, institutions which lend vast sums of money should be informed, not by judgments after the facts on a case-by-case basis, but by laws or regulations which are in existence in advance of the undertaking to execute loans, of the validity or invalidity of terms that are commonly used." (*Lazzareschi Inv. Co.* v. *San Francisco Fed. Sav. & Loan Assn.* (1971) 22 Cal.App.3d 303, 311 [99 Cal.Rptr. 417].)

For the foregoing reasons, I would affirm the judgment of the Court of Appeal.