MARIN TUG AND BARGE, INC., as owner of the Barge Marin Tenor; Jeffrey L. Mudgett; Susan Mudgett, Plaintiffs—Appellants,

v.

WESTPORT PETROLEUM; Shell Oil Products; Shell Oil Company; Shell Martinez Refinery, Defendants—Appellees.

Marin Tug and Barge, Inc., as owner of the Barge Marin Tenor; Jeffrey L. Mudgett; Susan Mudgett, Plaintiffs—Appellees,

v.

Westport Petroleum; Shell Oil Company, Defendants—Appellants.

Nos. 02–16983, 02–17104.
D.C. Nos. CV–96–04313–CW, CV–96–04313–CW/PJH.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 17, 2003.*

Decided Oct. 6, 2003.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before GRABER, FISHER, and BERZON, Circuit Judges.

## MEMORANDUM**

The appeal and cross-appeal from the district court's decision on remand arise out of an admiralty action regarding the contamination of the Marin Tenor, a barge owned by Marin Tug and Barge, Inc. We affirm. Because the parties are familiar with the record, we recite only the facts necessary to explain our decision.

1. The district court applied the correct legal standard to determine the reasonableness of the liquidated demurrage provision.

 Westport and Shell attempt to distinguish (1) examining the reasonable expectations of the parties at the time the contract was made from (2) examining the circumstances existing at the time the contract was made. California law draws no such distinction. *See Ridgley v. Topa Thrift & Loan Ass'n.*, 17 Cal.4th 970, 73 Cal.Rptr.2d 378, 953 P.2d 484, 488 (1998) (holding that there must be a reasonable

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

relationship between a liquidated damages clause and the range of actual damages that the parties could have anticipated). Accordingly, this court's previous memorandum disposition directed consideration of "the parties' reasonable expectations at the time the contract was entered into."

Further, our memorandum disposition, followed faithfully by the district court, emphasized that the relevant time period on which to focus the inquiry is the moment at which the contract was formed, rather than some later point. That the average net revenue or actual damages are less than the liquidated demurrage rate is insufficient to establish that the liquidated demurrage rate was unreasonable at the time the contract was formed.

The district court therefore did not err in finding that the $400 per hour liquidated demurrage rate was reasonable.

2. The district court did not commit clear error by finding that Marin Tug received the results of the flushing test on July 23.

■ The district court relied on a letter from Westport to the plaintiffs that arrived on July 23, which stated that "a determination was made by the marine surveyor that ... 'there is nothing in the results to suggest the high level of contamination as alleged by the barge company.' This information is available to you ... for your consideration." The district court reasoned that (1) no evidence proves Marin Tug learned of the results of the flushing test before the arrival of the letter, (2) the letter indicates that new information was being provided, and (3) a letter dated July 23 from Mr. Mudgett to Westport reports that he received the July 19 letter on July 23. In so inferring, the district court did not clearly err.

3. After holding that the Mudgetts received the results of the flushing experiment on July 23, before the cleaning took place, the district court determined that only damages for the costs of cleaning, not for additional loss-of-use damages measured by the actual cleaning period, were available. The district court did not err in declining to award loss-of-use damages for more than 35 days.

As early as June 17, 1996, Marin Tug told Westport that the barge needed to be cleaned. The Mudgetts spent much of the time between June 17 and notice of the result of the flushing experiment attempting to persuade Shell and Westport to pay for the cleaning. Eventually, the Mudgetts went forward with the cleaning at their own expense.

Under the circumstances, allowing the Mudgetts to collect liquidated demurrage for 20 more days, the period of the actual cleaning, would be akin to double recovery. The Mudgetts failed to provide a persuasive reason for delaying the cleaning until August. They could have undertaken the cleaning at their own expense either at the outset or soon after the flushing experiment was completed. *See Fireman's Fund Ins. Cos. v. Big Blue Fisheries Inc.*, 143 F.3d 1172, 1177 (9th Cir.1998). Thus, the district court's decision to award demurrage for a total of 35 days, plus the costs of the cleaning, rather than include additional loss-of-use damages measured by the 20–day period during the actual cleaning, is not clearly erroneous.

4. The district court did not abuse its discretion by refusing to hear additional evidence.

As the district court points out, Westport and Shell consistently ignore the limited nature of the issues on remand. The

additional pieces of evidence discussed by Westport and Shell-including the Mudgetts' unwillingness to accept the results of the flushing tests-do not address the question presented by the mandate, but rather critique the mandate itself. Thus, the district court did not abuse its discretion by refusing to hear additional evidence before it addressed the limited issues on remand.

**AFFIRMED.**