Filed 9/29/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICHOLAS AND SHARON HONCHARIW,<br><br>    Petitioners and Appellants,<br><br>v.<br><br>FJM PRIVATE MORTGAGE FUND, LLC, et al.,<br><br>    Defendants and Respondents. | A163756<br><br>(Sonoma County<br> Super. Ct. No. SCV267331) |

In the case before us, petitioners and appellants Nicholas and Sharon Honchariw took out a loan secured by real property. When they defaulted, the lender imposed a late-payment fee provided for in their loan agreement. The Honchariws commenced arbitration, in which they contended the late-payment fee was unlawful (1) pursuant to regulations applicable to a mortgage-loan originator with a license regulated by the Department of Real Estate, and (2) because it was a liquidated damage constituting an unlawful penalty in violation of section 1671.[1] The arbitrator denied both claims. A petition to vacate the arbitration award in the trial court failed, and the order on that petition was appealed.

---

[1] Unless otherwise specified, all further statutory references are to the Civil Code.

We shall reverse as the trial court erroneously failed to vacate an award that constitutes an unlawful penalty in contravention of the public policy set forth in section 1671.

### FACTUAL AND PROCEDURAL BACKGROUND

Nicholas and Sharon Honchariw took out a $5.6 million dollar bridge loan, with 8.5% interest assessed per annum, secured by a first lien deed of trust on real property.  Included in the record on appeal is a "NOTE SECURED BY A DEED OF TRUST," dated "12/13/2018" and executed between "FJM Private Mortgage Fund, LLC a California Limited Liability Company, as to an undivided 100.00% interest (CFL License # 6054701) (who will be called 'Lender')" and Nicholas and Sharon Honchariw (the "Loan").  (FJM Private Mortgage Fund, LLC is hereinafter referred to as "FJM Fund.")

The Honchariws defaulted on their September 1, 2019, monthly payment.  By missing that payment of $39,667, the Honchariws triggered certain late-payment fee provisions set forth in the Loan:  (1) a one-time 10% fee assessed against the overdue payment ($3,967); and (2) a default interest charge of 9.99% per annum assessed against the total unpaid principal balance of the Loan ("any unpaid principal balance of the loan at the time of default shall bear interest at the rate of nine and ninety-nine percent (9.99%) . . . above the herein stated note rate, automatically and without notice, from the time of default, until this Note has been paid in full, or until the specific default has been cured").  We shall refer to the sum of these amounts as the "Late Fee."

The Honchariws filed a demand for arbitration on October 7, 2019.  The arbitration demand alleged (1) the Loan was in violation of the "Real Estate Loan [L]aw," (Business & Professions Code § 10240, et seq.), and (2) the Late Fee was an unlawful penalty in violation of section 1671.  "First Bridge

2

Lending" and "FJM Capital, Inc." (hereinafter jointly referred to as "FJM Capital") averred the loan was not subject to the Real Estate Loan Law, and that the late-payment fee did not violate section 1671. The arbitrator agreed with FJM Capital on both points and denied the demand for arbitration. We shall refer to the arbitration award as "the Award."

The Honchariws petitioned to vacate the Award in November 2020. They sought to vacate the Award on the basis that the arbitrator exceeded their authority by denying claims in violation of "nonwaivable statutory rights and/or contravention of explicit legislative expressions of public policy," specifically identifying both the rights protected by the Real Estate Loan Law's prohibition against lenders charging more than 10% of the installment amount due (Bus. & Prof. C., §§ 10248.1, 10242.5) and section 1671.

The trial court denied the petition, holding the Honchariws " 'did not meet their burden of proof' to show that the 'default interest provision in the subject loan was invalid as a penalty. . . .' " "[E]ven when the Court considers the evidence presented in this motion, the Court cannot conclude that the arbitrator exceeded her powers by denying [the Honchariws'] claims."

A timely appeal ensued.

## DISCUSSION

## I.     Standard of Review and Governing Law

An arbitrator's decision "is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 (*Moncharsh*).)[2] Code of Civil Procedure section 1286.2 provides

_____

[2] The parties dispute whether the trial court conducted a de novo review of the arbitral decision in addition to its deferential review and the trial court order itself is not clear on the standards employed. As explained, *infra*, we review the arbitrator's decision on a de novo basis. Therefore, the

3

an exception to this general rule where "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4); see also, *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327, 333.)

"Arbitrators may exceed their powers by issuing an award that violates a party's unwaivable statutory rights or that contravenes an explicit legislative expression of public policy. [Citations.]" (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).) The public policy so contravened must be a "well-defined and dominant" public policy as "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" (*W.R. Grace and Co. v. Local Union 759, Intern. Union of United Rubber, Cork, Linoleum and Plastic Workers of America* (1983) 461 U.S. 757, 766 (*W.R. Grace*); see also *Department of Human Resources v. International Union of Operating Engineers* (2020) 58 Cal.App.5th 861, 873–880.) " '[W]hether the arbitrator exceeded his or her powers . . ., and thus whether the award should have been vacated on that basis, is reviewed on appeal de novo.' [Citation.]" (See *Ahdout v. Hekmatjah* (2013) 213 Cal.App.4th 21, 33.)

A brief review of section 1671 is sufficient to conclude that it expresses "well-defined and dominant" public policy such that a challenge predicated thereon escapes the general prohibition against review of arbitral decisions. (See *W.R. Grace, supra*, 461 U.S. at p. 766; *Moncharsh, supra*, 3 Cal.4th at pp. 31–33; *Richey, supra*, 60 Cal.4th at p. 916.)

---

standards applied by the trial court, including any potential error resulting from the standard applied, is of no consequence.

4

Section 1671 provides that a liquidated damages provision is either presumptively valid or invalid depending upon the subject matter of the contract. If the contract involves "the retail purchase, or rental . . . of personal property or services, primarily for . . . personal, family, or household purposes," (§ 1671, subd. (c)(1)), or involves "a lease of real property for use as a dwelling," (§ 1671, subd. (c)(2)), then a liquidated damages provision in that contract is presumptively void. (§ 1671, subd. (d).) We shall refer to those contracts described by subdivisions (c)(1)–(c)(2) as "consumer contracts." For all other contracts, which we shall refer to as "non-consumer contracts," "a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (§ 1671, subd. (b).)

Simply put, a liquidated damages provision is presumed valid if it is in a non-consumer contract but presumed invalid if it is in a consumer contract. (See *Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 (*Ridgley*).) The case before us involves a non-consumer contract as it is neither for the purchase of property for personal use nor does it involve a primary dwelling. (§ 1671, subds. (c)(1)–(c)(2).) Whether or not an agreement is a non-consumer contract or consumer contract, it may not violate public policy.

Section 1671 expresses clear public policy as "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " (*W.R. Grace, supra*, 461 U.S. at p. 766.) It is the public policy of California that liquidated damages bear a "reasonable relationship" to the actual damages that the parties anticipate would flow from breach; conversely, if the liquidated damages clause fails to so conform,

5

it will be construed as an unenforceable "penalty." (*Garrett v. Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 739 (*Garrett*).) The amount set as liquidated damages "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." (*Ibid.*) In the absence of such relationship, a contractual clause purporting to predetermine damages "must be construed as a penalty." (*Ibid.*) "Civil Code section 1671 and the case law interpreting it aim to combat unfair and unreasonable *coercion* arising from an imbalance of bargaining power." (*Constellation-F, LLC v. World Trading 23, Inc.* (2020) 45 Cal.App.5th 22, 27.)

Because an arbitrator may exceed their powers by enforcing a contract that is in violation of public policy, we conclude de novo review is appropriate. (*Moncharsh*, *supra*, 3 Cal.4th at p. 31.) "Based on section 1671(b)'s presumption that liquidated damage provisions in nonconsumer contracts are valid, the party challenging the provision bears the burden to show the provision was unreasonable under the circumstances existing when the parties entered into the contract. [Citations.]" (*Vivatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 806.)

## II. The Late Fee Violates Civil Code Section 1671[3]

The Late Fee provided for the following penalty based on even one missed monthly payment at any time during the life of the Loan: a one-time 10% fee of the overdue monthly payment and a default interest charge of 9.99% per annum assessed against the total amount of unpaid principal balance of the Loan.

---

[3] We do not reach the issue of which regulatory scheme governed the Loan as it is not necessary to do so in order to resolve this appeal.

As our Supreme Court explained in *Garrett*, late-payment fees serve a "dual purpose." First, they are "compensat[ion] [to] the lender for its administrative expenses and the cost of money wrongfully withheld." (*Garrett, supra,* 9 Cal.3d at pp. 739–740.) Second, "they encourage the borrower to make timely future payments." (*Ibid.*) Late-payment fees, however, may violate section 1671 and amount to unlawful penalties if their "primary purpose is to compel prompt payment through the threat of imposition of charges bearing little or no relationship to the amount of the actual loss incurred by the lender." (*Id.* at p. 740.)

The late-payment fee reviewed in *Garrett* was assessed against the "*unpaid principal balance of the loan obligation.*" (*Garrett, supra,* 9 Cal.3d at p. 740, italics in original.) Our Supreme Court held that such "a charge for the late payment of a loan installment which is measured against the unpaid balance of the loan must be deemed to be punitive in character." (*Ibid.*) The Court reasoned this is because "[i]t is an attempt to coerce timely payment by a forfeiture which is not reasonably calculated to merely compensate the injured lender." (*Ibid.*) Further, "a borrower on an installment note cannot legally agree to forfeit what is clearly a penalty in exchange for the right to exercise an option to default in making a timely payment of an installment." (*Id.* at p. 737.)

FJM Capital argues that *Garrett* cannot be relied upon to decide the legality of the Late Fee here imposed because it reviewed a prior version of section 1671 (revised effective July 1, 1978) that made all liquidated damages provisions (regardless of the characterization of the contract at issue) presumptively invalid. It goes so far as to say that *Garrett* was "legislatively overruled" with the enactment of current section 1671. We disagree. While the current version of section 1671 declares all liquidated damages clauses

7

presumptively invalid as to consumer contracts (as opposed to all contracts),[4] *Garrett* remains good law for the proposition that a late fee assessed against the entire unpaid balance of a loan constitutes an unlawful penalty and there is nothing in current section 1671 or the case law following *Garrett* holding otherwise.

In *Ridgley*, *supra*, 17 Cal.4th at pp. 977–982, decided two decades after the enactment of current section 1671, our Supreme Court considered the legality of a liquidated damages provision in a non-consumer contract, specifically referring to section 1671, subdivision (b). (See *Ridgley*, *supra*, 17 Cal.4th at p. 977 [" '[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.' "].) It reversed the lower court, finding a promissory note to contain an unlawful penalty where it imposed six months' interest if the borrowers prepaid the loan principal, but also provided that the six months' interest charge would not be imposed six months after execution of the note unless the borrowers had made a late interest payment or otherwise defaulted. (*Id.* at p. 980.)

In so doing, it cited to *Garrett* approvingly and without reservation: " 'a charge for the late payment of a loan installment which is measured against the unpaid balance of the loan must be deemed to be punitive in character. It

---

[4] Former section 1670 provided: " 'Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section.' " Former section 1671 read: " 'The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.' " (See *Garrett*, *supra*, 9 Cal.3d at p. 734, fn. 1.)

is an attempt to coerce timely payment by a forfeiture which is not reasonably calculated to merely compensate the injured lender.' ([*Garrett, supra*, 9 Cal.3d] at p. 740, fn. omitted; [Citations.]") (*Ridgley, supra*, 17 Cal.4th at p. 978.)[5] As the *Ridgley* court explained: "In short, '[a]n amount disproportionate to the anticipated damages is termed a "penalty." ' " (*Id.* at p. 972.) "A contractual provision imposing a 'penalty' is ineffective, and the wronged party can collect only the actual damages sustained." (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 931; see also *Ebbert v. Mercantile Trust Co. of California* (1931) 213 Cal. 496, 499 ["[A]ny provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty."].)

More recently, in another non-consumer contract case, the Federal District Court for the Northern District of California, in *Najarian Holdings LLC v. Corevest American Finance Lender LLC*, found late-payment fees calculated as a percentage of the outstanding principal balance to be void under section 1671. (*Najarian Holdings LLC v. Corevest American Finance Lender LLC*, 2020 U.S. Dist. LEXIS 188667, 2020 WL 5993225 at pp. *1–2 (N.D. Cal. Oct. 9, 2020) [plaintiffs are in the business of purchasing residences at foreclosure sales and then reselling those residences].) In so doing, it applied *Ridgley, supra*, 17 Cal.4th at p. 977, which quotes to the passage reproduced above from *Garrett*. (See *Najarian Holdings LLC v. Corevest American Finance Lender LLC*, at p. *2.) Subsequent California

---

[5] Moreover, even though the loan at issue in *Garrett* was extended to finance a primary residence, and thus, would today be considered a "consumer" loan, (*Garrett, supra*, 9 Cal.3d at p. 739), *Ridgley* cited *Garrett* to reiterate the same principle, i.e., that late-payment fees assessed upon the entire unpaid balance of a loan is an unenforceable penalty as a matter of law. (*Ridgley, supra*, 17 Cal.4th at p. 978.)

appellate court decisions have also cited *Garrett*, *supra*, 9 Cal.3d at pp. 739–740 approvingly, albeit in dicta. (See *Creditors Adjustment Bureau, Inc. v. Imani* (2022) 82 Cal.App.5th 131, 136; *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495, 501.)[6]

The two cases primarily relied upon by FJM Capital – *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1171 (*Walker*) and *Hoffman v. Security Pacific National Bank* (1981) 121 Cal.App.3d 964, 967, fn. 1 (*Hoffman*) – are readily distinguishable and do not assist our analysis. *Walker* was concerned with whether property inspection fees should be considered late-payment fees for purposes of section 2954.4, which limits late-payment fees for certain single-family dwellings. (*Walker*, *supra*, 98 Cal.App.4th at pp. 1165–1166.) In reviewing the evolution of the law of liquidated damages as applied to single-family dwellings, the *Walker* court observed that *Garrett* analyzed a since-superseded liquidated damages statute and cited to *Garrett* to illustrate the functions of liquidated damages clauses. (*Walker*, *supra*, 98 Cal.App.4th at p. 1171.) In dicta, the *Walker* court stated that if the liquidated damages issue were before it, it would affirm, as the late-payment fee imposed by the lender bore a reasonable relationship to the damages the parties expected the lender to sustain upon breach, thereby satisfying section 1671. (*Id.* at p. 1172.) *Hoffman* was concerned with whether a bank's charges for its customers writing insufficient funds checks amounted to penalty damages. (*Hoffman*, *supra*, 121 Cal.App.3d at pp. 968–969.) Neither *Walker* nor *Hoffman* addressed whether *Garrett* remains good law for the proposition that liquidated

---

[6] *Garrett*, *supra*, 9 Cal.3d at page 739, is also cited by a leading real estate treatise for the general proposition that late-payment fees cannot be assessed against the unpaid principal of a secured loan. (See Miller & Starr, Calif. Real Estate (4th ed., 2022), § 13:96.)

10

damages assessed against the unpaid principal balance of a loan are unreasonably related to the lender's expected damages as a matter of law.

Finally, FJM Capital argues that, whether or not *Garrett* controls, the Late Fee represents the parties' attempt to calculate FJM Capital's anticipated damages in the event of default and whatever the parties agreed to is lawful. This argument is premised upon the parties' statement in the Loan documentation that FJM Fund would incur difficult to estimate expenses[7] as a result of default coupled with the conclusory and de minimis testimony of Louis Bardis, the "principal owner and managing director" of FJM Capital. Bardis was asked whether " 'the late charge was in fact representing a fair and reasonable estimate.' " He answered: " 'Yes.' " There were no follow-up questions and no documentary support. Bardis' one-word answer and the parties' blanket statements in the Loan documentation are insufficient to support a finding that FJM Capital had attempted to estimate their damages in the amount of breach and that the Late Fee represents the reasoned outcome of such an attempt. The answer " '[y]es' " is not a demonstration of a "reasonable relationship" between the Late Fee and "the range of actual damages that the parties could have anticipated would flow from a breach." (*Ridgley*, *supra*, 17 Cal.4th at p. 977.)

FJM Capital also cites two bankruptcy cases – *East West Bank v. Altadena Lincoln Crossing, LLC* (C.D. Cal. 2019) 598 B.R. 633 (*East West*) and *In re 3MB, LLC* (E.D. Cal. 2019) 609 B.R. 841 (*3MB*) – for the proposition

---

[7] The Loan indicates that the Late Fee will be assessed because a default, "will result in [FJM Fund] incurring additional expense in servicing the loan, including, but not limited to sending out notices of delinquency, computing interest, and segregating the delinquent sums from not delinquent sums on all accounting, loan and data processing records, in loss to [FJM Fund] of the use of the money due, and in frustration to [FJM Fund] in meeting its other financial commitments."

11

that "[t]he amount of damages [a lender] actually incurred is irrelevant to the reasonableness of the liquidated damages clause." (*3MB*, *supra*, 609 B.R. at p. 851.) FJM Capital argues that actual damages are not relevant where the parties agree in the loan documents that a liquidated damages amount is reasonable.

This argument fails. In both *East West* and *3MB*, the borrower defaulted on fully matured obligations and was assessed a default interest at maturity. (See *East West*, *supra*, 598 B.R. at p. 636; *3MB*, *supra*, 609 B.R. at p. 848.) Here, just as in *Garrett*, the borrower defaulted on a partially mature obligation and was given a choice between making their note payment or defaulting and facing a "coercive" penalty. (*Garrett*, *supra*, 9 Cal.3d at p. 740.) *3MB* itself noted that our Supreme Court in *Garrett* recognized the significance of the charge being assessed against the entire principal for a partially matured obligation:

> "The [*Garrett*] court held that late charges based on the entire unpaid [principal] balance for failure to pay an installment was punitive and was not rationally calculated to merely compensate the injured lender. [Citation.] *Garrett* specifically distinguished *Thompson* [*v. Gorner* (1894) 104 Cal. 168 (*Thompson*)],[8] noting that at maturity, the borrower in *Thompson* 'owed only what he had contracted to pay had there been no default, the principal amount plus accrued interest. If these amounts were not then paid, the parties agreed that interest at the higher rate would accrue.' [*Garrett*, *supra*, 9 Cal.3d at p. 737.] That is precisely the situation here. 3MB failed to pay the 'balloon' at maturity and default interest began to accrue."

(*3MB*, *supra*, 609 B.R. at pp. 848–849.)

Further, FJM Capital's position that the language of the Loan must govern the result is belied by the language in section 1671 that contains

---

[8] As the *3MB* court summarized *Thompson*: "[D]efault interest following note maturity has long been allowed in California without resort to a liquidated damages analysis." (*3MB*, *supra*, 609 B.R. at p. 848.)

12

presumptions, and not conclusions, regarding the validity of a liquidated damages provision. If, as FJM contends, the validity of a given clause were purely a function of agreement and the Legislature intended to "legislatively overrule" former section 1671, it could have provided that liquidated damages provisions in non-consumer contracts are lawful, full stop. Instead, the Legislature provided for a presumption of validity (in non-consumer contracts), which in no way precludes a finding of invalidity where a liquidated damages presumption violates public policy. (See *Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 917.) The Honchariws cannot be legally bound by an agreement to pay a late-payment fee that violates public policy. (See *Wilson v. Stearns* (1954) 123 Cal.App.2d 472, 480.)

In sum, based on *Garrett* and its progeny, liquidated damages in the form of a penalty assessed during the lifetime of a partially matured note against the entire outstanding loan amount are unlawful penalties. Not surprisingly, our review of the caselaw reveals no case in which a liquidated damages provision was upheld when a borrower missed a single installment, and then was penalized pursuant to that provision, even in part, by a late-payment fee assessed upon the entire outstanding principal balance, much of it still to be owed. Put another way, by its very existence, the Honchariws have met their burden of showing an unlawful penalty.[9] (*Garrett, supra*, 9 Cal.3d at p. 740.)

---

[9] The Restatement (Second) of Contracts summarizes this principle as follows: "The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy." (§ 356 Liquidated Damages and Penalties.)

Thus, because the Late Fee includes a 9.99% interest rate assessed against the entire unpaid principal balance of the Loan at any time a single payment is missed, it is indistinguishable from the late-payment fee invalidated in *Garrett*.  We shall reverse.

## DISPOSITION

The order is reversed.  The Honchariws shall recover their costs on appeal.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Rodríguez, J.


A163756/*Honchariw v. FJM Private Mortgage Fund, LLC, et al.*

15

Trial Court:     Sonoma County Superior Court

Trial Judge:     Hon. Jennifer V. Dollard

Counsel:         Nicholas Honchariw, in pro. per., for Petitioners and
                 Appellants.

                 Law Offices of Mark J. Romeo and Mark J. Romeo for
                 Defendants and Respondents.