[No. G039326. Fourth Dist., Div. Three. May 6, 2008.]

GREENTREE FINANCIAL GROUP, INC., Plaintiff and Respondent, v. EXECUTE SPORTS, INC., Defendant and Appellant.

## COUNSEL

Jackson DeMarco Tidus Petersen & Peckenpaugh, Adorno Yoss Alvarado & Smith and William M. Hensley for Defendant and Appellant.

Alan L. Brodkin & Associates and Alan L. Brodkin for Plaintiff and Respondent.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

Plaintiff sued defendant for breach of contract, seeking a sum certain. Before trial, the parties agreed to settle the case for less than half the amount sought by the complaint, with defendant making installment payments. The terms of the settlement agreement provided that if defendant failed to make a payment, plaintiff could file a stipulation for entry of judgment, with the amount of the judgment being the entire amount sought in the complaint, as well as prejudgment interest, attorney fees, and costs. Defendant failed to make the first payment, and the trial court entered judgment pursuant to the terms of the parties' stipulation for entry of judgment.

 Under consistent authority, the judgment constitutes an unenforceable penalty because it bears no reasonable relationship to the range of actual damages the parties could have anticipated would flow from a breach of their settlement agreement. We publish this opinion to reaffirm that the rule set forth in *Sybron Corp. v. Clark Hosp. Supply Corp.* (1978) 76 Cal.App.3d 896

[143 Cal.Rptr. 306] (*Sybron*) continues to apply after the intervening amendment to Civil Code section 1671. We reverse and remand with directions to the trial court to enter judgment in the amount specified in the settlement agreement, plus postjudgment interest and costs.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 11, 2006, Greentree Financial Group, Inc. (Greentree), sued Execute Sports, Inc. (ESI), for breach of contract. The complaint alleged ESI had failed to pay $45,000 due under the contract in consideration of financial advisory services provided by Greentree. ESI answered the complaint, asserting affirmative defenses, including, but not limited to, failure to mitigate and prior material breach of the contract by Greentree.

On the day set for trial, the parties filed a notice of settlement with the court. The settlement was memorialized in a stipulation for entry of judgment (the stipulation). The stipulation provided that ESI would pay Greentree a total of $20,000, in two installments. If ESI defaulted on either one of its installment payments, Greentree would be entitled to "immediately have Judgment entered against [ESI] for all amounts prayed as set forth in [Greentree]'s Complaint in the above-entitled action, including interest, attorney fees and costs, less any amounts already paid by [ESI] . . . ."

ESI defaulted on the first installment payment of $15,000. On July 19, 2007, correctly anticipating Greentree would seek entry of judgment, ESI filed an opposition to entry of an excessive judgment. On the same day, Greentree submitted to the court a proposed judgment for $61,232.50, consisting of $45,000 in damages, $13,912.50 in prejudgment interest, $2,000 in attorney fees, and $320 in costs. Greentree also submitted a declaration from its attorney of record, attaching a copy of the stipulation and explaining the nature of ESI's default.[1] Judgment in the amount of $61,232.50 was entered on August 1, 2007. ESI timely appealed from the judgment.

### DISCUSSION

■ ESI contends the $61,232.50 judgment, entered after ESI failed to make the $15,000 installment payment under the terms of the stipulation,

---

[1] On our own motion, we augment the record on appeal with the declaration of Alan L. Brodkin in support of entry of judgment, filed August 1, 2007, in *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (Super. Ct. Orange County, 2007, No. 06CC04986). (Cal. Rules of Court, rule 8.155(a)(1)(A).)

constitutes enforcement of an illegal penalty. Greentree contends, to the contrary, the amount was a valid liquidated damages provision in a contract between the parties. Although the stipulation does not use the terms "liquidated damages" or "penalty," we look to its substance in determining its meaning. (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 656 [60 Cal.Rptr.2d 677]; *Sybron, supra,* 76 Cal.App.3d at p. 902, fn. 3.) Whether the amount to be paid upon breach of a contractual term should be treated as liquidated damages or as an unenforceable penalty is a question of law, which we review de novo. (*Harbor Island Holdings v. Kim* (2003) 107 Cal.App.4th 790, 794 [132 Cal.Rptr.2d 406].)

■ In determining whether the terms of the stipulation amount to an illegal penalty, we start with the language of Civil Code section 1671, subdivision (b): "[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." In interpreting this statute, our Supreme Court has noted: "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under section 1671[, subdivision ](b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach. The amount set as liquidated damages 'must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.' [Citation.] In the absence of such relationship, a contractual clause purporting to predetermine damages 'must be construed as a penalty.' " (*Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 [73 Cal.Rptr.2d 378, 953 P.2d 484] (*Ridgley*).)

Greentree argues the amount set forth in the stipulation was reasonably related to the damages it suffered as a result of ESI's breach of the underlying contract. But the breach we are analyzing is the breach of the *stipulation,* not the breach of the *underlying contract.* (See *Sybron, supra,* 76 Cal.App.3d at p. 902.) The amount required to be paid under the terms of the stipulation was $20,000. Admittedly, ESI failed to pay the first installment when due, and therefore breached the stipulation.

Greentree and ESI did not attempt to anticipate the damages that might flow from a breach of the stipulation. Rather, they simply selected the amount Greentree had claimed as damages in the underlying lawsuit, plus prejudgment interest, attorney fees, and costs. But the appellate record contains nothing showing Greentree's chances of complete success on the merits of its

case—the record contains only the complaint, the answer, and the stipulation. In the stipulation, "[e]ach party disclaims any admission of wrongdoing, fault, liability, or violation of law." The lack of a guarantee of success at trial may explain, at least in part, why Greentree was willing to accept in settlement less than half the amount demanded in the complaint.

■ Also, the $61,232.50 amount in the judgment bears no reasonable relationship to the range of actual damages the parties could have anticipated from a breach of the stipulation to settle the dispute for $20,000. "[D]amages for the withholding of money are easily determinable—i.e., interest at prevailing rates . . . ." (*Sybron, supra*, 76 Cal.App.3d at p. 900.) The amount of the judgment, however, was more than triple the amount for which the parties agreed to settle the case.

■ In a slightly different context, late payment fees on loans are designed to encourage the borrower to make timely payments, and to compensate the lender "for its administrative expenses and the cost of money wrongfully withheld." (*Garrett v. Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 739–740 [108 Cal.Rptr. 845, 511 P.2d 1197] [late payment fee which was calculated as percentage of unpaid principal balance had little or no relationship to lender's actual loss, and therefore was an illegal penalty].) Here, the judgment would have been enforceable if it had been designed to encourage ESI to make its settlement payments on time, and to compensate Greentree for its loss of use of the money plus its reasonable costs in pursuing the payment. The amount of the judgment, which awarded Greentree approximately $40,000 more than the settlement amount, does not merely compensate Greentree—it rewards Greentree by penalizing ESI. ■ "If the sum extracted from the borrower is designed to exceed substantially the damages suffered by the lender, the provision for the additional sum, whatever its label, is an invalid attempt to impose a penalty inasmuch as its primary purpose is to compel prompt payment through the threat of imposition of charges bearing little or no relationship to the amount of the actual loss incurred by the lender." (*Id.* at p. 740.)

The facts of *Sybron* are similar to those of the present case. A seller of hospital beds sued the buyers for almost $144,000; the buyers counterclaimed, arguing the beds were defective. (*Sybron, supra*, 76 Cal.App.3d at p. 898.) The parties reached a settlement, under which the buyers would pay $72,000 plus interest in 12 monthly installments. (*Ibid.*) The settlement agreement provided that if the buyers defaulted, a stipulated judgment for

$100,000 could be entered. (*Ibid.*) The buyers did default, and the stipulated judgment was entered by the trial court. (*Ibid.*)

On appeal, the court determined the stipulated judgment constituted an unenforceable penalty. The appellate court acknowledged, "[c]ertainly there is paperwork and time involved in the collection of an installment obligation. The creditor is entitled to bargain that if the installment debtor imposes upon the creditor by a continuing course of dilatory payment the creditor may accelerate and collect the entire obligation, plus a reasonable amount to compensate for delay." (*Sybron, supra*, 76 Cal.App.3d at p. 903.) But the court concluded the parties' liquidated damages figure, and the trial court's judgment enforcing it, "failed to take into account the need for proportion in damages—the critical item in evaluating penalty and forfeiture." (*Ibid.*) The stipulated judgment of $100,000, entered after the buyers defaulted on installment payments totaling $30,000 out of a settlement agreement to pay $72,000, could not be enforced. (*Ibid.*) To do so "would result in a $28,000 penalty for delay in payment of $30,000, a penalty which bears no rational relationship to the amount of actual damages suffered by respondent." (*Ibid.*)[2]

The same is true here. The stipulated judgment of $61,232.50 would result in a penalty assessment of approximately $40,000 more than the total $20,000 due under the stipulation. A late payment penalty fee of approximately $40,000 bears no reasonable relationship to any actual damages that might flow from ESI's failure to make the first installment payment. (See *Ridgley, supra*, 17 Cal.4th at p. 981 ["the charge of six months' interest on the entire principal, imposed for any late payment or other default, cannot be defended as a reasonable attempt to anticipate damages from default"]; *Garrett v. Coast & Southern Fed. Sav. & Loan Assn., supra*, 9 Cal.3d at p. 740 [interest amount charged on entire obligation instead of solely on missed installment is unenforceable penalty].) The judgment must therefore be reversed.

---

[2] *Sybron* was decided under former section 1671 of the Civil Code. (See *Sybron, supra*, 76 Cal.App.3d at p. 899, fn. 2.) The former version of the statute provided contract clauses liquidating damages in anticipation of a breach were only enforceable if determining actual damages was impracticable or extremely difficult (see Civ. Code, former §§ 1670, 1671); this strict standard now applies only in consumer goods and services contracts and residential property leases (*id.*, § 1671, subds. (c), (d)). The amendment of the statute does not save a judgment that imposes a penalty bearing no proportional relationship to the damages that might actually flow from a breach. (*Ridgley, supra*, 17 Cal.4th at pp. 976–977.) Indeed, the Supreme Court cited *Sybron* with approval in a case analyzing the postamendment version of section 1671. (*Ridgley, supra*, 17 Cal.4th at p. 978.)

Greentree attempts to distinguish *Sybron* and several other cases cited by ESI on the ground that, in those cases, the defaulting party had made one or more payments, while in this case ESI failed to make any payments. The key in determining whether the damages are a penalty, however, is whether there is a reasonable relationship between the amount to be paid and the damages. Indeed, the terms of the stipulation provided the same penalty—entry of judgment for $61,232.50 (less any amounts paid)—whether ESI defaulted on the initial $15,000 installment payment, or on the second and final $5,000 installment payment.

Aside from trying to distinguish the consistent authority supporting reversal, Greentree has failed to cite any statutory or case authority supporting its view. Greentree cannot cite any such authority because it simply does not exist.

With regard to the disposition of this case, a question arises as to the severability of the penalty provision from the remainder of the stipulation. At oral argument, both parties agreed the provision was severable. We need not reach the issue of severability, but we do note that Civil Code section 1671 addresses the validity of a liquidated damages *provision*, rather than the validity of a *contract* containing such a provision. None of the cases we have cited, *ante*, directly addresses severability, but their dispositions either remove the penalty provision from the judgment (*Sybron, supra*, 76 Cal.App.3d at p. 903), or analyze the penalty provision as separate and distinct from the remainder of the parties' contract (*Ridgley, supra*, 17 Cal.4th at pp. 973–974 [trial court "correctly held the penalty to be unenforceable"]; *Harbor Island Holdings v. Kim, supra*, 107 Cal.App.4th at p. 793 [trial court correctly entered judgment awarding damages, and correctly found provision for doubled rent was unenforceable penalty]).

The stipulation does not contain any provision for an award of attorney fees or prejudgment interest, although the judgment included $2,000 in attorney fees and $13,912.50 in prejudgment interest. The $20,000 settlement sum in the stipulation is unallocated, and may or may not have included Greentree's claimed attorney fees and prejudgment interest. We find no basis for awarding Greentree its attorney fees and prejudgment interest in addition to the stipulated settlement sum. Greentree is entitled to recover its costs in the trial court (Code Civ. Proc., § 1032), and postjudgment interest.

## Disposition

The judgment is reversed and the matter is remanded to the trial court with directions to reduce the judgment against ESI to $20,000, plus postjudgment interest and costs. In the interests of justice, neither party shall recover costs on appeal.

Moore, Acting P. J., and Ikola, J., concurred.

On May 28, 2008, the opinion was modified to read as printed above.