Filed 7/13/20; Certified for publication 8/4/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRED GRAYLEE, | |
| Plaintiff and Respondent, | G057901, G058409 |
| v. | (Super. Ct. No. 30-2018-01003115) |
| JOHN CASTRO et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeals from judgments of the Superior Court of Orange County, Carmen Luege, Commissioner, and Sherri L. Honer, Judge. Reversed and remanded with directions.

John Castro, in pro. per., and for Defendants and Appellants.

Duringer Law Group, Stephen C. Duringer, Edward L. Laird II and Stephanie A. Pittaluga for Plaintiff and Respondent.

\*          \*          \*

Defendants John and Rosa Castro (the tenants) leased a residential property from plaintiff Fred Graylee (the landlord).[1] The landlord brought an unlawful detainer action against the tenants, alleging they owed him $27,100 in unpaid rent. The day of trial, the parties entered into a stipulated judgment in which the tenants agreed to vacate the property by a certain date and time. If they failed to do so, the landlord would be entitled to enter a $28,970 judgment against them. The tenants missed their move-out deadline by a few hours and the landlord filed a motion seeking entry of judgment. The trial court granted the motion and entered a $28,970 judgment against the tenants under the terms of the stipulation. The tenants appealed, arguing the judgment constitutes an unenforceable penalty because it bears no reasonable relationship to the range of actual damages the parties could have anticipated would flow from a breach of the stipulation. We agree. The judgment is reversed and the matter remanded for further proceedings as set forth within this opinion.

I

FACTS AND PROCEDURAL HISTORY

The tenants entered into a residential lease with the landlord in May 2015 for a property in Anaheim, agreeing to pay $3,195 in monthly rent. In June 2018, the landlord served the tenants with a 3-day Notice to Pay Rent or Quit (notice to quit) that alleged the tenants owed $27,170 in unpaid rent. The tenants neither paid the amount demanded nor vacated the property, so the landlord filed this unlawful detainer action on

---

[1] The lease agreement lists the tenants' landlord as "B&G Property Management." The parties do not explain Graylee's connection to this entity or how he has standing. Nor is this clear from the record. However, both sides agree that Graylee was the tenants' landlord. Thus, we will accept this fact as true for purposes of this consolidated appeal. As explained below, the tenants appealed two judgments: one signed by a commissioner in June 2019 (G057901) and one signed by a judge in September 2019 (G058409). The June 10, 2019 judgment has been vacated and thus the appeal of that judgment is moot.

July 3, 2018. The landlord filed a second amended complaint in August 2018 (the complaint) seeking $27,170 in past-due rent, reasonable attorney fees, and forfeiture of the lease agreement, among other things. The tenants answered the complaint, denying most of the material allegations, including the landlord's claim that they owed $27,170 in unpaid rent. The answer also asserted two affirmative defenses. First, the landlord "waived, changed, or canceled the notice to quit." Second, the landlord had "accepted rent from [the tenants] to cover a period of time after the date the notice to quit expired." Trial was set for October 2, 2018.

On the day of trial, but prior to its commencement, the parties filed a handwritten stipulation for entry of judgment on a preprinted form (stipulation), which the trial court entered that day. Under the stipulation, the landlord was awarded possession of the property. A $28,970 judgment (consisting of unpaid rent and damages, attorney fees, and costs) would be granted in favor of the landlord "ONLY IF [the tenants] Fail[ed] to comply with [the] terms" of the stipulation.[2] The tenants agreed to return the keys and vacate the property by 3:00 p.m. on October 31, 2018, leaving it "in broom swept condition." Any personal property left behind would become property of the landlord and could be thrown away without notice. The tenants also waived all claims, known or unknown, against the landlord and his agents up through the date of the stipulation. The parties specified the stipulated judgment was contingent on the tenants vacating the property by 3:00 p.m. on October 31, 2018. If they did, the landlord would "waive[] all of the [$28,970] money Judgment . . . . If [they] fail[ed] to comply, the full Judgment Amount [would] be collectible and due from [the tenants] . . . ."

In January 2019, the landlord filed a motion for entry of the $28,970 judgment against the tenants, alleging they had failed to timely vacate the property and

---

[2] The stipulation states the judgment would be $27,970, but this appears to be a typo. The stipulation specifies the judgment consists of $27,170 in rent and damages, $1,200 in attorney fees, and $600 in costs. The sum of these components is $28,970, not $27,970.

failed to leave it in broom-swept condition.[3]  The motion was supported by a declaration from the landlord's property manager stating that tenant John Castro returned the key to the property around 1:15 p.m. on October 31, 2018.  Castro told the manager that the tenants would not be ready to vacate by 3:00 p.m. that day and asked for more time.  The manager accepted the key but denied the extension request.  The manager drove by the property later that day at 3:15 p.m. and saw the tenants carrying boxes out of the house, furniture, and other personal belongings inside the garage.  The tenants had vacated by the time she returned to the property around 10:30 a.m. the next day.  Her declaration also stated that the property had not been left in broom-swept condition but did not elaborate.

The tenants opposed the motion and filed declarations from John Castro and others asserting that the tenants had moved everything out of the house by 3:00 p.m. on October 31.  After which, the tenants moved personal belongings from outside the house into a moving truck without reentering the house.  John Castro's declaration also attached pictures to show the property had been left in broom-swept condition.

Following briefing, the trial court set an evidentiary hearing.  At the hearing's conclusion, the trial court found the tenants had failed to vacate the property by 3:00 p.m. on October 31, and granted the landlord's motion.  The trial court also issued a minute order clarifying that its entry of the stipulation on October 2, 2018, was not a final judgment:  "[A]lthough the pre-printed form indicates 'judgment is hereby ordered on all terms of the foregoing stipulation,' the stipulation clearly contemplated entry of judgment was conditional (i.e., it was not meant to serve as a final order) until after it was determined whether [the tenants] complied with vacating the premises by 3:00 p.m. on

---

[3]  Initially, the landlord filed a declaration of noncompliance requesting that the trial court declare a default under the stipulation and declare the $28,970 judgment due and owing.  The trial court denied this request, stating that the landlord must request a hearing.

4

10/31/18. [The landlord] filed his motion to enforce the stipulation, and after evidentiary hearing, the court found [the tenants] failed to vacate the property as agreed . . . . Accordingly, the court enters a money judgment for $28,970 in favor of [the landlord] and against [the tenants]." Judgment was entered on June 10, 2019 (June judgment), which the tenants appealed.

After filing their appeal, the tenants filed a motion to set aside the June judgment. They argued it had been erroneously signed by Commissioner Carmen Luege, who had previously been disqualified by peremptory challenge. The judgment should have been signed by Judge Sherri L. Honer, they asserted, since she had presided over the evidentiary hearing and had granted the landlord's motion for entry of judgment. On September 26, 2019, the trial court granted the tenants' motion, vacated the June judgment, and entered an amended judgment (signed by Judge Honer) against the tenants in the amount of $28,970. The tenants then appealed the amended judgment. This appeal was consolidated with the appeal of the June judgment by order of this Court.

## II

## DISCUSSION

Because the trial court vacated the June judgment, we find the appeal of that judgment to be moot. All references to the judgment below refer to the amended judgment entered on September 26, 2019.

Among other things, the tenants contend the $28,970 judgment entered against them is an unenforceable penalty under Civil Code section 1671, subdivision (b),[4] which governs liquidated damages clauses. The amount of the judgment, they argue, bears no reasonable relationship to the range of actual damages the parties could have anticipated would flow from a breach of the stipulation. We agree, as explained below.

---

[4] Subsequent statutory references are to the Civil Code unless otherwise indicated.

5

In evaluating whether a liquidated damages clause is an unenforceable penalty, courts apply a de novo standard of review when there are no conflicting or disputed facts. Neither side has identified any such facts as to this issue. Thus, the de novo standard applies. (*Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 807-808 (*Vitatech*).) We note that the landlord argues the proper standard is abuse of discretion under *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564. *Denham* is inapposite. It involved a court's denial of a motion to dismiss for failure to diligently prosecute a case. (*Id*. at pp. 563-564.)

## A. *Applicability of Section 1671 to the Stipulation*

The landlord offers only one rebuttal to the tenants' unenforceable penalty argument. He maintains liquidated damages analysis under section 1671 is irrelevant to the stipulation under subdivision (a) of that section, which provides: "This section does not apply in any case where another statute expressly applicable to the contract prescribes the rules or standard for determining the validity" of a liquidated damages provision. (§ 1671, subd. (a).) Based on this subdivision, he contends Code of Civil Procedure section 664.6 is expressly applicable and governs the stipulation at issue, rendering the remainder of section 1671 inapplicable.

We disagree. The exception in section 1671, subdivision (a), does not apply here. Code of Civil Procedure section 664.6 allows courts to enter judgment under the terms of a settlement agreement, and, if requested, retain jurisdiction to enforce the settlement. But a court cannot enter a judgment that contains an unenforceable liquidated damages clause. "[S]ection 664.6 does not allow a court to endorse or enforce a provision in a settlement agreement or stipulation which is illegal, contrary to public policy, or unjust." (*Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1127.) "'[A] court cannot validly enter a judgment or order which is void even if the parties agree to it.'" (*Vitatech*, *supra*, 16 Cal.App.5th at p. 807.) Unenforceable liquidated damages

6

provisions are void as against public policy.  (*Ibid*.)  As such, "a stipulated judgment that includes an unlawful liquidated damages provision is void and may be vacated."  (*Ibid.*)

*B.  Liquidated Damages Clause*

Before performing any analysis under section 1671, subdivision (b), we must first determine whether the stipulation contains a liquidated damages clause.  "'The term "liquidated damages" is used to indicate an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement, and which may not ordinarily be modified or altered when damages actually result from nonperformance of the contract.'  [Citations.]  'Liquidated damages constitute a sum which a contracting party agrees to pay . . . for breach of some contractual obligation.'"  (*McGuire v. More-Gas Investments, LLC* (2013) 220 Cal.App.4th 512, 521.)  "Courts look beyond the language of the contract to determine the actual circumstances of a liquidated damages clause."  (*Del Monte Properties & Investments, Inc. v. Dolan* (2018) 26 Cal.App.5th Supp. 20, 23.)

Here, the $28,970 judgment would only be entered if the tenants failed to comply with the stipulation.  In other words, the stipulation predetermined the amount of damages the landlord would be entitled to receive if the tenants breached their settlement obligations.  While the stipulation does not use the phrase "liquidated damages," its legal effect is the same as a liquidated damages provision.  As such, liquidated damages analysis applies.  (See, e.g., *Vitatech*, *supra*, 16 Cal.App.5th at pp. 802-803, 810-811 [applying liquidated damages analysis where stipulation provided the plaintiff would "'forbear from the filing'" of a judgment for the full amount of the complaint if the defendants timely made a lower settlement payment].)

*C. Analysis of Relevant Case Law*

Section 1671, subdivision (b), provides that a liquidated damages clause "is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."[5] Under this subdivision, "a liquidated damages clause becomes an unenforceable penalty 'if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach.' [Citation.] 'The amount set as liquidated damages "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained."' [Citation.] 'Absent a relationship between the liquidated damages and the damages the parties anticipated would result from a breach, a liquidated damages clause will be construed as an unenforceable penalty.'" (*Purcell v. Schweitzer* (2014) 224 Cal.App.4th 969, 974.)

In the context of a stipulated judgment, "the amount of the judgment must reasonably relate to the damages likely to arise *from the breach of the stipulation*, not the alleged breach of the underlying contract, because it is the breach of the stipulation that allows [the plaintiff] to enter judgment against [the defendant]." (*Vitatech*, *supra*, 16 Cal.App.5th at p. 810, italics added.) Thus, we analyze the damages flowing from the breach of the stipulation itself, not any damages that may have arisen from the tenants' alleged breach of the underlying lease agreement.

This Division has applied liquidated damages analysis to settlement agreements in two recent cases: *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495 (*Greentree*) and *Vitatech*, *supra*, 16 Cal.App.5th 796. These cases are discussed below, along with *Jade Fashion & Co., Inc. v. Harkham Industries,*

---

[5] Under section 1671, subdivision (c), a liquidated damages clause in a lease of real property used as a dwelling is evaluated under subdivision (d) of that section, rather than subdivision (b). As explained below, the relevant document is the stipulation, not the underlying lease. Thus, section 1671, subdivision (b), applies.

*Inc.* (2014) 229 Cal.App.4th 635 (*Jade Fashion*), which involved the same issue and was decided between *Greentree* and *Vitatech*.

In *Greentree*, the plaintiff sued for breach of contract, alleging the defendant had failed to pay the plaintiff $45,000 for services rendered. The parties settled prior to trial. Under the settlement, the defendant agreed to pay the plaintiff $20,000 total in two installments. If the defendant missed either payment, the plaintiff would be entitled to a judgment against the defendant in the amount of $45,000 plus interest, attorney fees, and costs. The defendant missed the first payment and, under the settlement, had a $61,232.50 judgment entered against it. (*Greentree*, *supra*, 163 Cal.App.4th at p. 498.)

We found the judgment to be an unenforceable penalty. The parties "did not attempt to anticipate the damages that might flow from a breach of the stipulation. Rather, they simply selected the amount [the plaintiff] had claimed as damages in the underlying lawsuit, plus prejudgment interest, attorney fees, and costs. But the appellate record contain[ed] nothing showing [the plaintiff's] chances of complete success on the merits of its case . . . . [¶] Also, the $61,232.50 amount in the judgment [bore] no reasonable relationship to the range of actual damages the parties could have anticipated from a breach of the stipulation to settle the dispute for $20,000." (*Greentree*, *supra*, 163 Cal.App.4th at pp. 499-500.)

We further explained "the judgment would have been enforceable if it had been designed to encourage [the defendant] to make its settlement payments on time, and to compensate [the plaintiff] for its loss of use of the money plus its reasonable costs in pursuing the payment. The amount of the judgment, which awarded [the plaintiff] approximately $40,000 more than the settlement amount, [did] not merely compensate [the plaintiff]—it reward[ed the plaintiff] by penalizing [the defendant]." (*Greentree*, *supra*, 163 Cal.App.4th at p. 500.)

9

The Second District Court of Appeal issued the *Jade Fashion* decision a few years after *Greentree*. In *Jade Fashion*, the defendant purchased garments from the plaintiff and then fell behind on its payments. (*Jade Fashion*, *supra*, 229 Cal.App.4th at pp. 638-639.) Prior to litigation, the parties entered into a settlement in which the defendant expressly admitted to owing the plaintiff $341,628.77 in both the settlement agreement and a guaranty provided by the defendant's CEO. (*Id*. at pp. 639-640.) The defendant agreed to make weekly payments until that balance was completely paid. If all its payments were timely, the defendant would receive a $17,500 discount on the total amount owed. (*Ibid*.) The agreement specified that time was of the essence for each payment and that the defendant would not be entitled to the discount if any payment was untimely. (*Ibid*.) Though the defendant made all its payments, several were late. Despite this, the defendant deducted the discount from its final payment. (*Id*. at p. 640.) The plaintiff demanded the defendant pay the outstanding $17,500, but the defendant refused. (*Id*. at pp. 640-641.) The plaintiff sued for breach of contract and obtained summary judgment against the defendant. (*Id*. at pp. 641-642.)

On appeal, the defendant argued the $17,500 discount was an unenforceable penalty because it bore no reasonable relationship to the damages the plaintiff would suffer from the late payments. (*Jade Fashion*, *supra*, 229 Cal.App.4th at pp. 645-646, 648.) The appellate court disagreed, finding that liquidated damages analysis did not apply: "The express language of the [settlement] establishe[d] that the $17,500 discount was not liquidated damages for a breach of contract, nor was it an additional payment over and above any debt that was owed. Instead, the $17,500 was part of the $341,628.77 debt which [the defendant] specifically admitted it owed to [the plaintiff] in both the [settlement agreement] and the continuing guaranty." (*Id*. at p. 649.) In distinguishing *Greentree*, the *Jade Fashion* court found the parties' settlement "was not an agreement to settle or compromise a disputed claim. Rather, it was an agreement

10

to forbear on the collection of a debt that was admittedly owed for goods that had been delivered so long as timely installment payments were made." (*Id*. at p. 648.)

After the decision in *Jade Fashion*, we revisited this issue in *Vitatech*. In *Vitatech*, the plaintiff filed a lawsuit alleging that the defendants failed to pay for certain goods and seeking $166,372.14 in damages plus attorney fees and costs. (*Vitatech*, *supra*, 16 Cal.App.5th at p. 801.) The parties agreed to a stipulated judgment prior to trial that provided "'judgment shall be entered against [the defendants], in favor of [the plaintiff], in the full prayer of the Complaint . . . [but the plaintiff] will forbear from the filing hereof and will accept, as full settlement of its claims against [the defendants], the principal sum of'" $75,000, payable by June 5, 2015. (*Id*. at p. 802.) The defendants failed to make the required payment and had a $303,620.12 judgment (comprised of damages, interest, attorney fees, and costs) entered against them. The defendants sought to vacate the judgment on grounds it was an unlawful penalty. (*Id*. at pp. 802-803.) The trial court denied the request, finding "'[t]he amount of the judgment did not represent a penalty; the lower amount [in the settlement] represented a discount to Defendants.'" (*Id*. at p. 803.)

We reversed, finding the judgment was an unenforceable penalty. We distinguished *Jade Fashion*, explaining that unlike the settlement in that case the *Vitatech* stipulation "was an agreement to compromise a *disputed* claim for less than alleged in the complaint." (*Vitatech*, *supra*, 16 Cal.App.5th at p. 814.) The parties "agreed to the stipulation for entry of judgment on the eve of trial to resolve a pending lawsuit . . . . [The defendants] never acknowledged their liability for the underlying claims or the damages . . . alleged in the complaint. Rather, they agreed to settle [the plaintiff's] claims for a lesser amount and [the defendants] agreed to pay additional damages if they defaulted." (*Ibid*.)

We also found "[n]othing in the stipulation or appellate record establishe[d] a reasonable relationship between [the defendants'] failure to pay the $75,000 settlement

11

amount and the $303,000 judgment. . . . [T]he parties made no effort to anticipate the damages that might flow from [the defendants'] failure to pay the settlement amount. Instead, the parties simply selected the amount [the defendants] had sought as damages in the underlying lawsuit. . . . Moreover, we [could not] conceive of any meaningful relationship between [the defendants'] failure to pay the amount [the plaintiff] agreed to accept in settlement of its disputed claims and a judgment that [was] more than four times that amount." (*Vitatech*, *supra*, 16 Cal.App.5th at pp. 810-811.)

The crucial distinction between the *Greentree* and *Vitatech* decisions and the *Jade Fashion* decision was whether the settlement was a compromise of a disputed claim. This was true in *Greentree* and *Vitatech*. (*Greentree*, *supra*, 163 Cal.App.4th at pp. 499-500; *Vitatech*, *supra*, 16 Cal.App.5th at p. 814.) It was not in *Jade Fashion*, where the defendant expressly admitted to owing the sum claimed by the plaintiff in two separate documents. (*Jade Fashion*, *supra*, 229 Cal.App.4th at pp. 648-649.)

Like *Greentree* and *Vitatech*, the stipulation at issue was a compromise of disputed claims. Here, the tenants did not expressly concede the merits of the unlawful detainer claim. Nor did they admit to owing $27,100 in unpaid rent in the stipulation or anywhere else in the record. Rather, the record shows the tenants disputed these claims and intended to challenge them at trial. For example, the answer denied the allegations in the complaint and asserted affirmative defenses, and the tenants also filed a motion in limine prior to trial to strike the notice to quit. On the brink of trial, the parties compromised their dispute. They agreed that the landlord would be awarded possession of the property and waive the unpaid rent allegedly owed (i.e., settle for a lesser amount). In exchange, the tenants would move out by 3:00 p.m. on October 31, 2018 and release all their claims against the landlord. If the tenants failed to timely vacate, they would pay the landlord liquidated damages in the form of a $28,970 judgment.

Further, the amount of the judgment does not withstand scrutiny. Nothing in the record shows the parties made any effort to reasonably anticipate the amount of

12

damages that might flow from the tenants' breach of the stipulation. And we see no meaningful relationship between the $28,970 judgment and the tenants' failure to move out by 3:00 p.m. (or alleged failure to leave the property in broom-swept condition). Instead, the amount of the judgment was calculated using the unpaid rent alleged in the complaint. But, like *Greentree* and *Vitatech*, nothing in the record shows the landlord's chances to completely succeed at trial and recover all the unpaid rent allegedly owed. Based on *Greentree* and *Vitatech*, we find the $28,970 judgment to be an unenforceable penalty.

Finally, we note the landlord argued in the trial court that the tenants had admitted to owing the entire sum of unpaid rent because the stipulated judgment specifically included $27,170 in unpaid rent, which matched the sum alleged in the complaint. Curiously, the landlord omitted this argument from his brief on appeal. Generally, "'[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment. . . .'" (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.) Nonetheless, we briefly address this contention and find it unpersuasive.

There was no express admission by the tenants in the stipulation that they owed any unpaid rent. Nor was the $27,170 in unpaid rent set forth in the stipulation a tacit admission by tenant that they owed this amount. Instead, it was provided to show how the $28,970 judgment was calculated. This is evident from the language of the stipulation, which states that the parties agreed "that a money judgment be granted in favor [*sic*] plaintiff(s) as follows: [¶] $27,170.00 Rent & Damages, $1,200 Attorney fees, $600.00 Costs, for a TOTAL SUM OF [$28,970]." That the amount of unpaid rent in the stipulation matches the amount alleged in the complaint is unconvincing by itself. In *Vitatech*, like here, the defendants "stipulated to entry of judgment 'in the full prayer of the Complaint' if they failed" to timely make their settlement payment to the plaintiff. We found "[t]his language [did] not constitute an admission of liability for breach of the

13

underlying contract nor [did] it constitute an admission of the amount of damages that breach caused." (*Vitatech*, *supra*, 16 Cal.App.5th at p. 811.)

Because we determine the $28,970 judgment constitutes an unenforceable penalty, we do not address the tenants' arguments that the trial court abused its discretion by (a) failing to find the tenants' return of the key to the landlord at 1:15 p.m. constituted substantial compliance with the stipulation; and (b) failing to award only actual damages sustained by the landlord under section 1492.[6] We also provide no opinion as to whether either side is owed any attorney fees or trial court costs under the stipulation since neither side briefed these issues. We direct the trial court to consider these issues on remand and to also determine whether the landlord suffered any actual damages as a result of tenants' breach of the stipulation.

---

[6] Section 1492 states "[w]here delay in performance is capable of exact and entire compensation, and time has not been expressly declared to be of the essence of the obligation, an offer of performance, accompanied with an offer of such compensation, may be made at any time after it is due, but without prejudice to any rights acquired by the creditor, or by any other person, in the meantime."

14

## III

## DISPOSITION

The judgment entered on June 10, 2019 has been vacated, and the appeal of that judgment is moot. The amended judgment entered on September 26, 2019, is reversed. The matter is remanded for further proceedings as directed within this opinion. The defendants are entitled to their costs in this appeal.


MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


GOETHALS, J.

Filed 8/4/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRED GRAYLEE, | G057901, G058409 |
| Plaintiff and Respondent, | (Super. Ct. No. 30-2018-01003115) |
| v. | |
| JOHN CASTRO et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendants and Appellants. | |

      Attorney Eliza Duggan, Center for Consumer Law & Economic Justice, UC Berkeley School of Law, has requested that our opinion filed on July 13, 2020, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

      The opinion is ordered published in the Official Reports.


                             MOORE, ACTING P. J.

WE CONCUR:


ARONSON, J.


GOETHALS, J.