Filed 3/15/21  Certified for Publication 4/5/21 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BUILT PACIFIC, INC.,<br><br>    Defendant and Appellant. | D076601<br><br><br>(Super. Ct. No. 37-2019-00032291-CU-EN-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

Diefenbach Law Group, James C. Diefenbach for Appellant.

Lance A. Grucela,  Department of Industrial Relations, Division of Labor Standards Enforcement for Respondent.


Built Pacific, Inc. (BPI) appeals from a judgment entered against it and in favor of the California Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE).

The DLSE issued a Civil Wage Penalty Assessment (CWPA) against BPI for labor law violations on a public works project.  BPI entered into a

settlement agreement with the DLSE but failed to timely pay the settlement amount. As a result, BPI was not released from liability, the DLSE sought judgment based on the final CWPA, and the superior court entered judgment on the CWPA pursuant to Labor Code[1] section 1742, subdivision (d).

BPI appeals, asserting that the judgment must be reversed because it is based on an unreasonable and unenforceable liquidated damages clause of the settlement agreement under Civil Code section 1671, subdivision (b). We conclude Civil Code section 1671 does not apply because judgment was entered pursuant to the Labor Code and not a "contract." Even if section 1671 were to apply, we conclude the disputed provision in the settlement agreement is both reasonable and enforceable. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

BPI worked as a subcontractor on a public works project, the San Diego Regional Airport Authority Project at the San Diego International Airport. Austin Sundt Joint Venture (Austin Sundt) was the general contractor.

In 2015, the DLSE investigated BPI's compliance with Public Work Laws (Lab. Code, div. 2, pt. 7, ch. 1) on the project. As a result of its investigation, the DLSE issued a CWPA alleging Labor Code violations against BPI in June 2017. In that CWPA, the DLSE sought payment for wages owed to laborers on the project and statutory penalties for a total amount of $119,319.76. Austin Sundt was also named in the CWPA as the prime contractor on the project and was jointly and severally liable as a

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

matter of law.[2]  Austin Sundt withheld approximately $70,000 in contract retention funds owed to BPI because of the CWPA.

BPI timely filed a request for review of the CWPA.  Austin Sundt did not file its own request for review but was granted status as an Interested Person to the proceedings pursuant to California Code of Regulations, title 8, section 17208.

BPI asserted Austin Sundt was solely responsible for the alleged wage violations as Austin Sundt set the rates for BPI's employees on the project and affirmatively represented that the Airport Authority approved the rates. BPI demanded that Austin Sundt either pay the DLSE the amount necessary to resolve the CWPA or agree to reimburse BPI for any such payment. Austin Sundt did not agree to either of BPI's demands.  BPI and Austin Sundt had a separate dispute regarding change orders from the project and BPI was simultaneously seeking over $200,000 from Austin Sundt in a related civil action.

BPI and Austin Sundt engaged in settlement discussions with the DLSE.  In October 2018, a DLSE attorney emailed BPI and Austin Sundt asking them to confirm their agreement to resolve the CWPA for a total sum of $82,077.15.  BPI offered to pay the additional $12,000 if Austin Sundt would pay the $70,000 it was retaining to the DLSE to fund the settlement but stated it would seek reimbursement from Austin Sundt for all funds paid to the DLSE in the separate civil action.  BPI and Austin Sundt were unable

---

[2]    Pursuant to section 1743, subdivision (a) the general or prime contractor on a public works project is jointly and severally liable for a CWPA issued against its subcontractor.  (See also *Violante v. Communities Southwest Development and Construction Co.* (2006) 138 Cal.App.4th 972, 979.)

3

to agree on terms of payment, so Austin Sundt declined to enter the joint settlement with the DLSE.

Meanwhile, the hearing on the merits of BPI's request for review of the CWPA was set for February 13, 2019. Approximately one week before the hearing, BPI reached out to the DLSE to work out terms of a settlement "funded exclusively by payment from Built Pacific." In response, the DLSE provided a draft settlement agreement with recalculated interest and a term requiring BPI to fund the settlement within 90 days.

On February 11, 2019, two days before the review hearing, BPI and the DLSE entered into a settlement agreement, wherein BPI agreed to immediately withdraw its request for review and to submit payment to the DLSE in the amount of $83,201.40, no later than May 9, 2019. Upon timely payment, the DLSE agreed to release both BPI and Austin Sundt from all claims related to the CWPA. The agreement stated, "[BPI] agrees that time is of the essence, that timely payment as specified herein is a material part of this agreement, and that should any payment be made late, [BPI] shall be in breach of this agreement and DLSE will be entitled to obtain a judgment based on the full amount of the CWPA, including applicable liquidated damages and interest, less credit for any payments actually made toward the SETTLEMENT AMOUNT." BPI withdrew its request for review that same day and the hearing officer vacated the upcoming hearing.

BPI informed Austin Sundt of the settlement and stated that it was forced to enter into an agreement for payment of the $83,201 based on Austin Sundt's refusal to use its own funds to pay the settlement demand. BPI demanded immediate reimbursement of the $83,201 and immediate payment of the additional $70,513.54 Austin Sundt was withholding. Austin Sundt did not respond to BPI's demand but later inquired whether BPI had funded

4

the settlement. BPI responded that it had not funded the settlement and would not do so until Austin Sundt released the retention.

Austin Sundt later confirmed with the DLSE that BPI did not fund the settlement and entered into its own settlement agreement with the DLSE to resolve Austin Sundt's liability under the CWPA for the same amount, $83,201.40. The Austin Sundt settlement agreement specifically stated that it did not release BPI from any remaining liability and that the DLSE would seek the remaining balance of the CWPA from BPI.

In June 2019, the DLSE filed a request with the superior court to enter judgment against BPI on the final CWPA. The request included a copy of the final CWPA, signed by the labor commissioner. The superior court entered judgment against BPI in the amount due on the CWPA, including interest, fees, and liquidated damages pursuant to section 1742.1 subdivision (a), and less a credit for $83,201.40, for a total amount of $69,101.54.

Unaware of the DLSE's settlement with Austin Sundt, BPI emailed the DLSE stating it had entered the settlement in reliance on Austin Sundt's agreement to release the retention funds, but Austin Sundt refused to do so. BPI asked the DLSE to request that Austin Sundt pay the retention directly to the DLSE or, in the alternative, to allow BPI to make payments over a period of three to four months. The DLSE informed BPI that the CWPA had become final when BPI failed to make timely payment of the settlement amount, as specified in the settlement agreement. The DLSE further informed BPI that Austin Sundt had settled its own liability and that judgment had been entered against BPI for the full amount of the CWPA, plus interest and liquidated damages, and less a credit for the amount paid by Austin Sundt.

BPI then filed an ex parte application to vacate the judgement. BPI asserted the matter had been settled pursuant to a written settlement agreement that was satisfied by full and complete payment by Austin Sundt and, in the alternative, the judgment enforced an unenforceable liquidated damages clause. The superior court treated the ex parte as a noticed motion and denied the motion after hearing argument from the parties.

BPI appeals.

## DISCUSSION

BPI's sole contention on appeal is that the judgment effectively enforces a liquidated damages clause in the settlement agreement between BPI and the DLSE that is invalid pursuant to Civil Code section 1671, subdivision (b).

### I.

### *The Public Works Law*

Construction projects paid for, in whole or in part, out of public funds are considered "public works" and are subject to special provisions of the Labor Code, generally referred to as "the Public Works Law." (§ 1720, et seq.) Of relevance here, "[w]orkers employed by contractors or subcontractors in the execution of any contract for public work are deemed to be employed upon public work" and must be paid the general prevailing rate for wages, holiday, and overtime work in the locality in which the work is performed. (§§ 1772, 1773, 1774.) A contractor or subcontractor that fails to pay prevailing rates is liable for the unpaid wages and is further subject to penalties as set forth in the related statutes. (See §§ 1775, 1777.7, 1813.)

The labor commissioner or his or her designee (in this case, the DLSE) has the authority to investigate whether a contractor or subcontractor has violated the prevailing wage law on a public works project. (§§ 1741, 1775, subd. (a).) If the commissioner or the DLSE determines a violation has

6

occurred, the commissioner or the DLSE issues a written assessment, or CWPA, describing "the nature of the violation and the amount of wages, penalties, and forfeitures due." (§§ 1741, 1775, subd. (a).)

Section 1742 provides the exclusive method for a contractor or subcontractor to seek review of a CWPA and specifies that an affected party must file a written request for review within 60 days of service of the CWPA. (§ 1742, subds. (a), (d).) If an affected party files a timely request for review, an impartial hearing officer is appointed and a hearing on the merits of the CWPA is commenced within 90 days. (*Id.*, subd. (b).) After the hearing, the director issues a written decision affirming, modifying, or dismissing the assessment and the resulting CWPA becomes final if an affected party does not seek further judicial review within 45 days. (*Id.*, subds. (b), (c).) If the affected parties do not file a written request for review within 60 days, the original assessment becomes final. (*Id.*, subd. (a).) In either case, once the assessment is final, the labor commission may file a copy of the CWPA with the superior court and "[t]he clerk, immediately upon the filing, shall enter judgment for the state against the person assessed in the amount shown on the certified order." (*Id.*, subd. (d).)

Neither section 1742 nor any other section of the Public Works Law specifically addresses a situation in which a party makes but subsequently withdraws a written request for review. However, California Code of

7

Regulations, title 8, section 17225 (Rule 25) provides additional guidance.[3] Under Rule 25, an affected party may withdraw a request for review any time before the hearing officer issues a final decision. (*Id.*, subd. (a).) Moreover, a request for review may be reinstated for good cause upon motion filed within 60 days of the notification of withdrawal or, in the event of fraud, within 60 days of the discovery of such fraud. (*Id.*, subd. (b).) A request for review may not be reinstated once the CWPA has become final and entered as a court judgment. (*Id.*, subd. (c).)

## II.

### *Civil Code Section 1671 Does Not Apply to a Judgment Entered Pursuant to a CWPA*

Civil Code section 1671, subdivision (b) addresses the validity of provisions "in a contract liquidating the damages for the breach of the contract." The plain language of the statute indicates it does not apply to judgments not based in contract. (Civ. Code § 1671, subds. (a), (b).) As the judgment at issue here was entered based on the CWPA and pursuant to section 1742, Civil Code section 1671 does not apply.

The DLSE issued the CWPA against BPI and Austin Sundt pursuant to its authority under the Public Works Law and the CWPA became final in

---

[3] We hereby grant the DLSE's unopposed request to take judicial notice of the California Code of Regulations, title 8, sections 17201 through 17270 (the Prevailing Wage Hearing Regulations) and the Initial Statement of Reasons for Proposed Action to Adopt California Code of Regulations, title 8, chapter 8, subchapter 6, sections 17200 through 17270 (ISOR). (See Evidence Code § 451 ["Judicial notice *shall* be taken of . . . public statutory law"].) The DLSE also asks us to take judicial notice of a memorandum and check indicating funds received from BPI on October 28, 2019. We deny that request as those items are not necessary to the resolution of this appeal. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063; *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

April 2019, 60 days after BPI withdrew its request for review. (See §§ 1741, 1775, subd. (a); Cal. Code Regs., tit. 8, § 17225.) BPI subsequently failed to timely pay the agreed upon settlement amount and, therefore, was not released from liability under the CWPA per the terms of its settlement agreement with the DLSE. The DLSE reached a separate settlement agreement with Austin Sundt, but that agreement expressly did not release BPI from any remaining liability under the CWPA. Thereafter, the DLSE sought and the superior court entered judgment against BPI based on the then final CWPA, less the amount paid by Austin Sundt, pursuant to section 1742.

BPI contends Civil Code section 1671 applies because the judgment is effectively based on a breach of the settlement agreement between BPI and the DLSE. We disagree. The request for judgment attached only the final CWPA and the court entered judgment pursuant to section 1742 based solely on the CWPA. The settlement agreement stated the DLSE would release BPI from all claims related to the CWPA "[u]pon *timely payment of the SETTLMENT AMOUNT*." [Emphasis added.] As discussed, BPI withdrew its request for review but never made any payment towards the settlement amount. Accordingly, the CWPA against BPI became final and the DLSE sought, and received, judgment against BPI based on the final CWPA and pursuant to section 1742, subdivision (d).

BPI argues that courts have consistently applied Civil Code section 1671 in similar situations to invalidate judgments based on settlement agreements requiring payment of the full amount of the original demand after a missed payment. (See *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495, 499 (*Greentree*); *Ridgley v. Topa Thrift & Loan Assn.* (1998) 17 Cal.4th 970, 977 (*Ridgley*).) However, the

9

cases BPI relies upon address civil contract disputes; they do not address the applicability of Civil Code section 1671 to judgments based on the Public Work Laws or any other similar statutory laws. (See *Greentree, supra,* at p. 498 [addressing settlement of breach of contract claim based on contract for financial services]; *Ridgley, supra*, at p. 973 [addressing prepayment fee in loan contract]; see also *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 800 [addressing settlement of breach of contract claim].)

Finally, BPI contends if we decide, as we do, that Civil Code section 1671 does not apply, BPI would effectively be precluded from challenging the final CWPA, and thus the alleged liquidated damages clause, because the 60-day window to reinstate review had passed by the time it defaulted. While this does appear to be the case, BPI provides no authority indicating how this fact is relevant to our interpretation of the statute. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach)* [Appellant bears the burden to provide legal authority and court may treat unsupported contentions as waived].) Regardless, BPI entered into the settlement agreement with the advice of counsel and should have understood the CWPA would become final prior to the date upon which payment was due. Moreover, BPI could have avoided the issue entirely by either making the payment or seeking reinstatement pursuant to Rule 25 within 60 days.[4]

We conclude Civil Code section 1671 does not apply to the judgment at issue here.

_____

[4]   BPI also contends the court's inherent powers in equity would allow either the trial court or the Court of Appeals to conclude the present judgment is unjust, but similarly does not develop the argument or provide any relevant legal authority. (See *Benach, supra,* 149 Cal.App.4th at p. 852.)

## III.

*Even if Civil Code Section 1671 Were to Apply, the Alleged
Liquidated Damages Clause is Reasonable and Enforceable*

Even if Civil Code section 1671 applies to the judgment at issue, we
would conclude the alleged liquidated damages provision in the settlement
agreement is both reasonable and enforceable.

Civil Code section 1671, subdivision (b) states, "a provision in a
contract liquidating the damages for the breach of the contract is valid unless
the party seeking to invalidate the provision establishes that the provision
was unreasonable under the circumstances existing at the time the contract
was made." The California Supreme Court has interpreted this to mean a
liquidated damages clause is invalid if it "bears no reasonable relationship to
the range of actual damages that the parties could have anticipated would
flow from a breach." (*Ridgley*, *supra*, 17 Cal.4th at p. 977.) Instead, the
amount specified must be the result " 'of a reasonable endeavor by the parties
to estimate a fair average compensation for any loss that may be sustained.' "
(*Ibid.*) We review de novo whether such a term is enforceable. (*Greentree,
supra,* 163 Cal.App.4th at p. 499.)

Here, BPI entered into the settlement agreement while the CWPA was
pending, with an assessment that totaled $119,319.76. Although BPI's
request for review was pending, BPI agreed to withdraw that request to
settle the matter for $83,201.40, an amount less than the full assessment.
The DLSE agreed to this lower amount in part to expedite the payment of
wages statutorily owed to the laborers, which had already been significantly
delayed. The settlement agreement itself therefore specified timely payment
was a material part of the agreement and conditioned the release of liability
on such timely payment.

11

BPI asserts this was a liquidated damages clause that resulted in a penalty of almost as much as the original amount due under the settlement. Not so. BPI was simply required to pay the remaining amount due on the original CWPA, which now included additional interest and liquidated damages pursuant to section 1742.1. Essentially, in the event of a breach, the liquidated damages clause placed the parties in the same position as they were in before the agreement was executed, except for the fact that BPI had voluntarily withdrawn its request for review. Moreover, we note the amount of the judgment entered against BPI, $69,101.54, was less than the agreed upon settlement amount. Given the totality of circumstances existing at the time the parties entered into the agreement, the clause was reasonable.

BPI again asserts *Greentree* is instructive. The judgment at issue in *Greentree* was a stipulated judgment entered in accordance with a settlement between the parties to resolve a claim for breach of a financial services contract. (*Greentree, supra,* 163 Cal.App.4th at p. 498.) The parties agreed to settle the matter for $20,000, but further agreed that, if defendant failed to pay that amount, plaintiffs would be entitled to an immediate entry of judgment against defendant for the full $45,000 that plaintiffs had originally claimed in damages, plus prejudgment interest and attorney fees and costs, less any amounts already paid by defendant. (*Ibid.*) The court explained that the damages must be viewed as flowing from a breach of the settlement agreement, not the original contract, that there was nothing in the record to establish the likelihood plaintiffs would ultimately be successful in the litigation, and that the lack of guarantee of success may have explained why plaintiffs were willing to settle for less than half the amount of its original claim. (*Id.* at pp. 499-500.) In that context, the court found the liquidated

12

damages clause was unenforceable under Civil Code section 1671, subdivision (b). (*Id*. at p. 501.)

While the clause at issue in *Greentree* may appear like the one at issue here at first glance, the context surrounding the two cases is materially different. As noted by the court, *Greentree* involved a civil contract dispute of the type in which the parties often have significantly differing views regarding the amount in controversy. (*Greentree, supra,* 163 Cal.App.4th at pp. 499-500.) By contrast here, the total amount due under the CWPA was based on statutory law and represented actual wages due to the laborers, plus statutorily defined penalties. Further, unlike a civil plaintiff, the DLSE was statutorily vested with the authority to investigate the alleged labor violations and to determine the amount due under the applicable statutes. (See §§ 1741, 1742, 1775, subd. (a); Cal. Code Regs., tit. 8, § 17225.) Although the DLSE was willing to take less than the full amount due under the CWPA, it was willing to do so in order to expedite payment of the wages due to the laborers, and not based on a lack of guarantee that it would succeed in obtaining the full amount claimed in litigation. (See *Greentree, supra*, 163 Cal.App.4th at pp. 499-500.) In this context, a judgment for the full amount due under the CWPA, less a credit for payments already made, was reasonable.

Finally, BPI asserts that it relied on an expectation that Austin Sundt would fund the settlement and Austin Sundt ultimately funded the settlement 36 days later. BPI argues that the judgment therefore represents an unreasonable 83% penalty based on the relatively short delay.

The record belies BPI's characterization of the settlement and the underlying negotiations. BPI and Austin Sundt had previously been unable to reach an agreement under which Austin Sundt would fund a settlement

13

with the DLSE. Shortly before the review hearing, BPI reached out to the DLSE directly, knowing that the DLSE was aware of BPI's ongoing dispute with Austin Sundt, to work out terms of a settlement "*funded exclusively by payment from Built Pacific.*" BPI and the DLSE then entered into the agreement under which BPI agreed to make payment of the settlement amount no later than May 9, 2019. Although the agreement included a release of liability for Austin Sundt, the record and the agreement itself establish both BPI and the DLSE understood the settlement payment was to be funded exclusively by BPI. When BPI failed to comply with the terms of the agreement, the DLSE accepted a separate settlement from Austin Sundt for a portion of the amount due under the CWPA and entered judgment against BPI for the remaining amount due on the CWPA.

Even if Civil Code section 1671 were to apply, we conclude the amount of the judgment entered was neither unreasonable itself or based on an unreasonable liquidated damages provision in the settlement agreement between BPI and the DLSE.

14

## DISPOSITION

The judgment is affirmed.  The DLSE is awarded its costs on appeal.


DO, J.

WE CONCUR:


HALLER, Acting P. J.


DATO, J.

Filed 4/5/21

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEPARTMENT OF INDUSTRIAL RELATIONS, DIVISION OF LABOR STANDARDS ENFORCEMENT,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BUILT PACIFIC, INC.,<br><br>    Defendant and Respondent. | D076601<br><br>(Super. Ct. No. 37-2019-00032291-CU-EN-CTL)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed March 15, 2021 was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

HALLER, Acting P. J.

Copies to:  All parties